**JARL INVESTMENTS, L.P., Janice Bioni, Daniel Fleck and Randall Fleck, Appellees**

v.

**Lois FLECK and Lawrence Fleck, Appellants.**

Superior Court of Pennsylvania.

Argued Aug. 21, 2007.
Filed Nov. 28, 2007.

1114

Robert E. Dauer, Jr., Pittsburgh, for appellants.

Chad A. Wissinger, Pittsburgh, for appellees.

BEFORE: GANTMAN, TAMILIA, AND POPOVICH, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellants, Lois Fleck and Lawrence Fleck, appeal from the order entered in the Allegheny County Court of Common Pleas, entering declaratory judgment with preliminary injunctive relief in favor of Appellees, JARL Investments, L.P., Janice Bioni, Daniel Fleck, and Randall Fleck. We affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. In 1964, Louis Fleck opened the Red Bull Inn. By the late 1970s, he operated Red Bull Inns of America, Inc. and had roughly 20 Red Bull Inns scattered throughout Western Pennsylvania. Louis Fleck and his wife, Lois, had four children: Janice Fleck Bioni, Randall Fleck, Daniel Fleck, and Lawrence Fleck. Janice and Randall took positions as restaurant managers. Lawrence accepted an executive position with Red Bull Inns of America, Inc. Daniel Fleck decided to branch out from the family business.

¶ 3 For reasons that remain unclear, Lawrence leveraged the corporate assets to such a degree that Red Bull Inns of America, Inc. could not satisfy its obligations to creditors, investors, or the government. Red Bull Inns of America, Inc. and the Fleck family were decimated by bankruptcy. Lawrence Fleck went into self-imposed exile; he broke ties with his family for several years. Louis and Lois Fleck lost their home. Janice Bioni and her husband re-mortgaged their home and liquidated a retirement account to satisfy outstanding tax obligations. The Flecks were left with a single restaurant, located at 5205 Campbells Run Road, Pittsburgh, PA ("the Restaurant"). Louis and Lois Fleck had purchased the property at 5205 Campbells Run Road sometime prior to September 1983. The Flecks and R.B. No. 2 Limited Partnership ("R.B. 2") entered into a Lease Agreement on September 1, 1983. R.B. 2 represented the Red Bull Inn operating on that property.[1]

¶ 4 The Lease Agreement, which was set to expire on December 31, 2003, provided in pertinent part:

\* \* \*

**Section 1.4** This Lease shall be deemed and construed to be a **"net lease"** and Tenant shall pay to Landlord absolutely net throughout the term and any renewal term, the base rent, additional rent, and other payments hereunder, free of any charges, assessments, impositions or deductions of any kind and without abatement deduction or set-off except as provided in the definition of "Gross Sales" herein.

---

1. The Flecks separated the land from the business for three reasons. First, for tax planning purposes: the Flecks could depreciate the value of real estate and also take tax deductions associated with the business. Second, for estate planning purposes: the Flecks could de-

vise the land to their heirs without the heirs' having to assume responsibility for the operations of the business. Third, the Flecks protected the intrinsic value of the land from the risks of operating a business, such as unprofitability or unsatisfied creditors.

**Section 1.5** As additional rent, Tenant shall pay or cause to be paid promptly as the same become due, and before any penalty is added thereto or imposed thereon because of nonpayment, all Impositions. The term "Imposition" as used herein shall mean **all taxes and assessments,** including but not limited to real estate taxes, use and occupancy taxes, personal property taxes, transit taxes, water and sewer charges, rates and rents, charges for utility services, excises, levies, license and permit fees, mercantile taxes, gross receipt taxes, sales taxes and **other charges, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever,** which shall or may, during this Lease be assessed, levied, charged, confirmed or imposed upon or become payable out of or in respect of or become a lien on the Leased Premises, or any part thereof, or the interest of either Landlord or Tenant therein, but shall not include any municipal, state or federal income taxes, assessed against Landlord, or any income, profits or revenues tax, assessment or charge imposed upon the rent received as such by Landlord under this Lease. All Impositions shall be apportioned on a calendar month basis with respect to the commencement and expiration of this Lease.

\* \* \*

(Net Lease Agreement, dated 9/1/93, at 8–9) (emphasis added).

¶ 5 On January 5, 1996, Louis and Lois Fleck formed JARL Investments, Limited Partnership ("JARL"). JARL held two assets: the property at 5205 Campbells Run Road and Louis and Lois Fleck's rights under the September 1983 Lease Agreement. Thus, the land and the Restaurant were held by two different partnerships, JARL and R.B. 2, respectively. Separating the real estate from the Restaurant permitted Louis to further insulate his interest in the real estate from the risk—if the Restaurant failed, the Fleck family would retain possession of the land. The JARL Investments Partnership Agreement ("JARL Agreement") listed Louis and Lois Fleck as both general partners and limited partners. As gratitude for their support through the bankruptcy, Louis and Lois invited Janice and Randall to join JARL as limited partners, each holding 48% shares of JARL equity. Louis and Lois Fleck held the remainder of JARL's equity in equal shares.

¶ 6 Louis invited Lawrence and Daniel to rejoin the family business. He persuaded Janice and Randall to give one-half of their interests in JARL to Daniel and Lawrence. Thus, JARL evolved into its current arrangement: Louis and Lois Fleck each held 2% of the partnership's equity and stood as general partners; the four Fleck children each held 24% and stood as limited partners. R.B. 2 had the same arrangement of partners, but Louis and Lois each held 42% of the equity and the Fleck children each held 4%. Sometime around May 2000, Louis reinstated Lawrence as manager of the Restaurant. In September 2003, R.B. 2 borrowed roughly $40,000.00 from JARL. When Louis Fleck died on January 31, 2004, Lois became the sole general partner of R.B. 2 and JARL.

¶ 7 Following his father's death, Lawrence retained his management position in the Restaurant. The Restaurant stopped paying rent to JARL in January 2004. JARL paid over $40,000.00 for Restaurant property taxes in 2004 and 2005 and paid close to $12,000.00 in Restaurant maintenance costs, despite the expressed terms of the lease.[2] The JARL checkbook shows

---

**2.** On January 1, 2004, R.B. 2 became a hold-over tenant "subject to the same terms, condi-

at least one withdrawal for "cash" in the amount of $1,000.00 with no stated purpose or accounting notations. JARL paid over $23,000.00 for accounting services performed by an accountant of dubious professional competence, despite the fact that JARL wrote less than 40 checks per year and maintained simple accounts.

¶ 8 In November 2004, Janice, Daniel, and Randall realized that Lois and Lawrence were operating R.B. 2 at JARL's expense. Janice, Daniel, and Randall—representing 72% of JARL's equity—removed Lois as general partner of JARL and promoted themselves as general partners. Sometime thereafter, Lois listed the Restaurant and the property at 5205 Campbells Run Road for sale. JARL attempted to evict R.B. 2; R.B. 2 filed for bankruptcy protection before the eviction could be executed. (*Id.* at 102). On November 30, 2006, Appellees filed an emergency action for declaratory judgment.

¶ 9 On December 1, 2006, the court convened a hearing on the emergency action. At the hearing, Daniel Fleck testified that R.B. 2 owed JARL over $360,000.00 for unpaid rent, unpaid taxes, and outstanding loans. Lois Fleck testified as follows:

[Appellants' Counsel]: And immediately prior to your husband's death, who were the general partners of JARL?

[Lois Fleck]: Just Lou and I.

[Appellants' Counsel]: Just you and your husband?

[Lois Fleck]: Yes, Lou.

[Appellants' Counsel]: And, Mrs. Fleck, immediately prior to the death, who were the [limited partners] of JARL?

[Lois Fleck]: I don't remember.

(N.T. Hearing, 12/6/06, at 188–89).

[Appellees' Counsel]: Has JARL loan[ed] money to the Red Bull Inn from time to time?

[Lois Fleck]: I don't know. As long as I've been there.

[Appellees' Counsel]: You don't recall JARL loaning the Red Bull Inn $40,000.00 several months before Louis passed away?

[Lois Fleck]: No.

[The Court]: What was your answer?

[Lois Fleck]: No.

[Appellees' Counsel]: I believe you testified a few minutes ago that JARL has paid the taxes for the Red Bull Inn from time to time, is that right?

[Lois Fleck]: Yes.

[Appellees' Counsel]: When did the Red Bull Inn pay JARL back for those payments?

[Lois Fleck]: They paid JARL back so they could pay their taxes. They paid their loan.

[Appellees' Counsel]: So your testimony is that if JARL paid Red Bull's taxes, they have been paid in full?

[Lois Fleck]: Yes.

[Appellees' Counsel]: And if I were to go into the checkbook ledgers, I would find money going from the Red Bull Inn back to JARL?

[Lois Fleck]: I don't think so.

[Appellees' Counsel]: So has the Red Bull Inn paid JARL back for the tax payments JARL made?

[Lois Fleck]: Would you repeat that, please?

[Appellees' Counsel]: Sure. And I'm not trying to confuse you. I know this is complicated. [On direct examination], you said that JARL has occasionally paid taxes for the Red Bull Inn, is that right?

tions, and covenants as the old lease." *Clairton Corp. v. Geo–Con, Inc.*, 431 Pa.Super. 34, 635 A.2d 1058, 1059 (1993) (internal citations omitted).

[Lois Fleck]: Yes, that's right.

[Appellees' Counsel]: Okay. Are you familiar with the lease between the Red Bull Inn and JARL?

[Lois Fleck]: **No.**

[Appellees' Counsel]: You're not?

[Lois Fleck]: My husband took care of that.

[Appellees' Counsel]: Okay. So do you know who's supposed to pay the taxes as between JARL and Red Bull Inn?

[Lois Fleck]: **JARL is to pay their taxes and we're to pay ours.**

[Appellees' Counsel]: And who's "we"?

[Lois Fleck]: [R.B. 2].

[Appellees' Counsel]: What taxes does JARL have?

[Lois Fleck]: Property tax, school tax.

[Appellees' Counsel]: Are any of those things covered in the lease between JARL and the Red Bull?

[Lois Fleck]: **I just said I wasn't familiar with the lease.**

(*Id.* at 197–99) (emphasis added).

 ¶ 10 On December 14, 2006, the court granted relief in Appellees' favor. The court: (1) enjoined Lois from holding herself out as the general partner of JARL; (2) recognized Janice, Daniel, and Randall as JARL's duly elected general partners; (3) directed Lois and Lawrence to turn over all of JARL's "monies, accounts, books, records and assets, in any form kept" to JARL's general partners; (4) instructed Lois and Larry to preserve

their personal financial records and those belonging to R.B. 2 for inspection upon Appellees' request; and (5) pursuant to the JARL Partnership Agreement, the court ordered Appellees to remit payment for Lois Fleck's 4% interest in JARL as retroactive to the date of her removal, November 24, 2004. (Trial Court Order, dated 12/12/06, at 1–3). The court ordered the payment to be held in escrow by Appellants' attorney pending a final hearing and granted Lois "7% [interest] *per annum* from November 24, 2004 to the date of the payment into the said escrow, as called for by Section 12.2 of the [Partnership Agreement]." (*Id.* at 3).[3]

¶ 11 Appellants filed a timely notice of appeal on January 10, 2007. On January 17, 2007, the court ordered Appellants to file a concise statement of matters complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellants' timely Rule 1925(b) statement consisted of seventy-nine paragraphs covering eighteen pages. Appellants dedicated a majority of their concise statement to the facts of the case and the law supporting their allegations of error.

 ¶ 12 On February 12, 2007, the trial court filed an opinion in which it characterized Appellants' Rule 1925(b) statement as "lengthy and unenlightening." Relying on *Kanter v. Epstein*, 866 A.2d 394 (Pa.Super.2004), *appeal denied*, 584 Pa. 678, 880 A.2d 1239 (2005), *cert. denied*, 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858

---

**3.** A pre-trial order that declares the rights of the parties is a final and immediately appealable order. *See Nationwide Mut. Ins. Co. v. Wickett*, 563 Pa. 595, 763 A.2d 813 (2000); 42 Pa.C.S.A. § 7532. Only where a declaratory judgment is entered after a jury or non-jury trial, must post-trial motions be filed to preserve issues for appellate review. *Motorists Mut. Ins. Co. v. Pinkerton*, 574 Pa. 333, 830 A.2d 958 (2003). The order in the instant case followed a proceeding in the nature of a

pre-trial evidentiary hearing only. Therefore, the order entering declaratory judgment is immediately appealable, and post-trial motions were not necessary to preserve the issues for appellate review. *See Keating v. Keating*, 855 A.2d 80, 83 n. 1 (Pa.Super.2004), *appeal denied*, 581 Pa. 707, 867 A.2d 524 (2005). Additionally, an appeal may be taken as of right from an order imposing a preliminary injunction. Pa.R.A.P. 311(a)(4).

(2006), the court suggested that the issues raised on appeal should be deemed waived. Although Appellants' Rule 1925(b) statement is poorly drafted, the allegations of error are distinguishable from the protracted recitations of fact and law. Therefore, we will address Appellants' issues on appeal.

¶ 13 Appellants raise six claims for review:

1. WHETHER THE COURT ERRED AS A MATTER OF LAW BY HOLDING THAT LOIS FLECK WAS PROPERLY REMOVED AS A GENERAL PARTNER OF JARL INVESTMENTS, L.P.

2. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW BY HOLDING THAT THE FAILURE TO PAY LOIS FLECK AS REQUIRED BY SECTION 12.2 OF THE PARTNERSHIP AGREEMENT SATISFIED AND FULFILLED · THE REQUIREMENTS OF THE PARTNERSHIP AGREEMENT AND SECTION 12.2.

3. WHETHER THE COURT ERRED AS A MATTER OF LAW BY HOLDING THAT UPON THE REMOVAL OF LOIS FLECK AS GENERAL PARTNER, THE PARTNERSHIP DID NOT DISSOLVE AND CONTINUED WITH JANICE BIONI, DANIEL FLECK AND RANDALL FLECK AS GENERAL PARTNERS.

4. WHETHER THE COURT ERRED AS A MATTER OF LAW BY HOLDING THAT JANICE BIONI, DANIEL FLECK AND RANDALL FLECK WERE DULY ELECTED AS THE GENERAL PARTNERS OF JARL INVESTMENTS, L.P.

5. WHETHER THE COURT ERRED AS A MATTER OF LAW BY GRANTING INJUNCTIVE RELIEF IN FAVOR OF [APPELLEES] WHERE NO SUCH RELIEF WAS REQUESTED AND NO RIGHT TO SUCH RELIEF WAS ESTABLISHED.

6. WHETHER THE COURT'S DECISION AND ORDER ARE AGAINST THE WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW FOR THE FOLLOWING REASONS:

A. [APPELLEES'] EVIDENCE FAILED TO SHOW THAT LOIS FLECK WAS OR COULD BE PROPERLY REMOVED AS GENERAL PARTNER OF JARL INVESTMENTS, L.P.;

B. [APPELLEES'] EVIDENCE FAILED TO SHOW THAT UPON ANY REMOVAL OF LOIS FLECK AS GENERAL PARTNER OF JARL INVESTMENTS, L.P. THAT THE PARTNERSHIP WOULD NOT BE DISSOLVED BUT WOULD CONTINUE WITH JANICE BIONI, DANIEL FLECK AND RANDALL FLECK AS GENERAL PARTNERS;

C. [APPELLEES'] EVIDENCE FAILED TO SHOW THAT JANICE BIONI, DANIEL FLECK AND RANDALL FLECK WERE DULY ELECTED TO SERVE AS THE GENERAL PARTNERS OF JARL INVESTMENTS, L.P.;

D. [APPELLEES'] EVIDENCE FAILED TO SHOW THAT [APPELLEES'] WERE ENTITLED TO INJUNCTIVE RELIEF GRANTED IN FAVOR OF [APPELLEES] WHERE NO SUCH RELIEF WAS REQUESTED AND NO RIGHT TO SUCH RELIEF WAS ESTABLISHED.

(Appellants' Brief at 4–5).

¶ 14 As a prefatory matter, we note Appellants' brief on appeal contains no argument relative to Appellant's fourth

issue. In their statement of questions involved, Appellants sixth issue simply restated their previous claims as challenges to the weight of the evidence. In their appellate brief, Appellants presented no argument relative to their challenge to the weight of the evidence. Thus, we deem Appellants' fourth and sixth issues waived on appeal. *See* Pa.R.A.P. 2119(a); *Lackner v. Glosser*, 892 A.2d 21, 29–30 (Pa.Super.2006) (stating failure to offer analysis or case citation in support of relief results in waiver).

■■■■■ ¶ 15 The following principles guide our review of Appellants' first and third issues:

> Our standard of review in a declaratory judgment action is narrow. We review the decision of the trial court as we would a decree in equity and set aside factual conclusions only where they are not supported by adequate evidence. We give plenary review, however, to the trial court's legal conclusions.

*Universal Health Services, Inc. v. Pennsylvania Property and Cas. Ins. Guar. Ass'n*, 884 A.2d 889, 892 (Pa.Super.2005) (internal citations omitted). "In reviewing a declaratory judgment action, we are limited to determining whether the trial court clearly abused its discretion or committed an error of law." *Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa.Super.2004).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super.2000) (internal citations omitted).

4. 42 Pa.C.S.A. §§ 7531–7541.

■■■ ¶ 16 In their first issue on appeal, Appellants argue the JARL Agreement authorizes the removal of a general partner following the affirmative vote of **all** of the general partners and a majority of the limited partners. Appellants contend Section 10.2 of the JARL Agreement authorizes Lois' removal, but only if Lois, as the sole general partner, votes in favor of her own removal. To the extent that the trial court found Section 10.2 ambiguous, Appellants point to the December 5, 2006 hearing, wherein Lois Fleck and the scrivener of the JARL Agreement testified that the affirmative vote of all of the General Partners was necessary to remove any Partner, including a General Partner.

¶ 17 In their third argument on appeal, Appellants argue Sections 9.1 and 9.4 of the JARL Agreement require "that General Partners may be admitted to the Partnership only upon the express written consent of **all** of the Partners." (Appellants' Brief at 24). Appellants maintain the court order effectively terminated the JARL Partnership because it removed Lois Fleck before she consented to the elevation of Janice Bioni, Daniel Fleck and Randall Fleck. Appellants aver "the continuation of the Partnership by Janice Bioni, Daniel Fleck and Randall Fleck is unlawful and in violation of the Partnership Agreement and Pennsylvania Law." (*Id.* at 25). Appellants contend the Limited Partners had no authority to remove the General Partner or appoint themselves as General Partners. Appellants conclude the court's injunction should be vacated and Lois should be reinstated as JARL's sole General Partner. We disagree.

¶ 18 Section 7532 of the Declaratory Judgments Act [4] provides the general scope of a declaratory remedy:

## § 7532. General scope of declaratory remedy

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S.A. § 7532.

¶ 19 Section 7533 of the Declaratory Judgments Act applies the declaratory remedy to the construction and interpretation of documents:

## § 7533. Construction of documents

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

42 Pa.C.S.A. § 7533.

¶ 20 "The interpretation of a contract is a question of law." *Halpin v. LaSalle University,* 432 Pa.Super. 476, 639 A.2d 37, 39 (1994), *appeal denied,* 542 Pa. 670, 668 A.2d 1133 (1995).

When interpreting a contract, the court's paramount goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement.

When the words used in a contract are ambiguous, a court may examine the surrounding circumstances to ascertain the intent of the parties. When the language of a writing is clear and unequivocal, however, its meaning must be determined by its contents alone.... When determining whether a contract is ambiguous, a court must view the contract as a whole and not in discrete units.

A court may not disregard a provision in a contract if a reasonable meaning may be ascertained therefrom. In construing a contract, each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument. The intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished.

*Bethlehem Steel Corp. v. MATX, Inc.,* 703 A.2d 39, 42 (Pa.Super.1997) (quoting *Halpin, supra* at 39) (internal citations omitted).

■■ ¶ 21 Additionally, Section 8334 of the Uniform Partnership Act provides:

## § 8334. Partner accountable as fiduciary

(a) **General rule.**—Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

\* \* \*

15 Pa.C.S.A. § 8334.[5]

> [P]artners owe a fiduciary duty one to another. One should not have to deal with his partner as though he were the opposite party in an arms-length transaction. One should be allowed to trust his partner, to expect that he is pursuing a common goal and not working at cross-purposes. [ . . . ]

*Clement v. Clement,* 436 Pa. 466, 468, 260 A.2d 728, 729 (1970).

¶ 22 Instantly, the trial court responded to Appellants' first and third issues as follows:

> The Agreement ... is a well-drafted document, clearly intended to prevent the acts Lois has undisputedly committed.[2] There is no doubt that [Appellees'] remedy for those improper acts would include [Lois'] removal under the Agreement. Even though neither Louis nor Lois could have anticipated that the family, which had been through so much, would come to the current pass, the Agreement itself covers the contingency. Section 10.2 deals with the removal of a Partner, a defined term which includes both a General Partner and a Limited Partner. [Appellants] contend that, contrary to that definition, the use of the word "Partner" in one parenthetical phrase means only "Limited Partner." As a result, [Appellants] contend it is impossible for Lois ... to be removed as a General Partner without her consent.

> ---
> [2.] The [c]ourt hesitates to adopt in this instance [Appellees'] reasoning regarding the rule that documents are construed against the drafter. The two partnerships did not arise out of an adversary relationship, where that rule might have meaning. Rather, the creation of the two partnerships was the attempt by a father and husband to salvage the remnants of his family's fortune, created in large part by his own efforts and his own

> genius. He hoped, as the credible evidence shows, to protect both aspects of what was saved from the First Bankruptcy, the real estate (then of future value) and the last remaining restaurant (then of present income-producing value).

> Such an interpretation is absurd given the other provisions of the Agreement.... Her duties as a General Partner are expressly set forth elsewhere in the agreement and include the clear statement that she is a **fiduciary.** One of the anticipated remedies for a violation of a General Partner's duties is found in Section 10.2, which is fully quoted below:

>> Section 10.2. **Removal.** A Partner may be removed from the Partnership at any time upon the affirmative vote of all of the General Partners and a Majority in Interest (other than the Partner whose removal is proposed) of the Limited Partners. The removal shall be effective immediately upon delivery to the removed Partner of written notice of his removal.

> Substituting the wordier definition of "Partner," Section 10.2 would read as follows:

>> Section 10.2. **Removal.** A [General Partner or a Limited Partner] may be removed from the Partnership at any time upon the affirmative vote of all of the General Partners and a Majority in Interest (other than the [General Partner or Limited Partner] whose removal is proposed) of the Limited Partners. The removal shall be effective immediately upon delivery to the removed [General Partner or Limited Partner] of written notice of his removal.

> [Appellants'] argument, in effect, is that the arguably poor placement of the par-

---

**5.** The Uniform Partnership Act applies to any supplements to the Pennsylvania Revised Uni-

form Limited Partnership Act. 15 Pa.C.S.A. § 8504.

enthetical "other than the Partner whose removal is proposed" controls over the defined term "Partner," and also controls over the fiduciary duties of the General Partner so that he or she can never be removed. This raises the placement of a parenthetical phrase to the status of a clause absolving Lois of all breaches of her clearly described fiduciary duties. It is not a **reasonable** interpretation of the clause.

[Appellants'] interpretation of Section 10.2 would leave the Limited Partners of JARL, who have the majority financial interest, without **any** remedy under an otherwise sensibly-drafted agreement. This would be an absurd result and [Appellants] continued insistence on this absurdity has caused great harm to JARL and threatens even greater harm if not immediately brought to a halt. There is only one **reasonable** interpretation of Section 10.2, that Lois can be removed as a General Partner without her consent, upon the unanimous vote of all other General Partners (none, at the time in question) and a majority vote of the Limited Partners.

(Trial Court Opinion, filed December 14, 2006, at 3–5) (emphasis in original).

¶ 23 We agree with the trial court's analysis of the removal clause. Additionally, we emphasize a key provision of the JARL Agreement: "General Partners shall manage the affairs of the Partnership in a prudent and businesslike manner." (JARL Agreement at 13). This provision of the JARL Agreement relates to Section 8334 of the Uniform Partnership Act. Following Louis' death, R.B. 2 violated the Lease Agreement when it stopped paying rent and property taxes. JARL paid for maintenance on the property and provided loans to R.B. 2. JARL—under Lois' stewardship—also took no action to recover the substantial amount of money owed by R.B.

2. Additionally, Lois' testimony demonstrates an alarming lack of comprehension for the Lease Agreement between R.B. 2 and JARL. The JARL Agreement, and basic concepts of fiduciary duties between partners, called for a better understanding of the partnerships' basic operations. In short, Lois failed to manage JARL in a prudent and businesslike manner. As a result, her removal as general partner was appropriate.

¶ 24 In their second issue on appeal, Appellants argue "Section 12.1 of the Partnership Agreement expressly requires that with respect to payments to any removed partner, all payments ... must be made within **one year** from the date of the removal." (*Id.* at 22). Appellants contend Appellees' failure to remit full payment of Lois' partnership interest negates Lois' removal: "[T]he [JARL] Agreement provided that a Partner may not be removed without receiving the payment required by Section 12.1 of the Partnership Agreement." (Appellants' Brief at 23). Appellants' second issue is limited in scope and refers to payment as a condition to removal. Appellants conclude the condition of payment has not been satisfied; thus, Lois was not removed in accordance with the JARL Agreement. We disagree.

¶ 25 Section 12.1 of the JARL Agreement provides:

> Section 12.1. **Payments to a Bankrupt, Withdrawing or Removed Partner.** In the case of the bankruptcy, removal or withdrawing of a Partner with respect to which payment is required under this Article XII, payment of such Partner's interest in the Partnership shall be made within one (1) year from the date of such Partner's bankruptcy, removal or withdrawal. For the purpose of making such payment to such bankrupt, withdrawing or removed Partner, the General Partners

may distribute to such Partner in complete satisfaction of such Partner's interest (i) such Partner's *pro rata* share of each of the assets of the Partnership (after taking into account all Partnership liabilities), (ii) cash equal to the value of such Partner's interest in the Partnership as herein determined or (iii) a combination of such Partner's *pro rata* share of Partnership assets and cash. In making distribution under this Section 12.1, the General Partners are directed to select assets other than cash only if the distribution of such assets would not unduly interfere with the ability of the Partnership to carry out its purposes. To the extent the General Partners elect to make payment to such Partner in cash, the value of such Partner's interest shall ·be determined by the General Partners in good faith. For purposes of this Section 12.1, if the interest of a General Partner, whether a General Partnership interest or a Limited Partnership interest, is being determined under this Section 12.1, such General Partner shall not participate in the powers, authorities and discretions granted to the General Partners under this Section 12.1.

(JARL Agreement, Section 12.1).

¶ 26 In the instant case, Section 12.1 of the JARL Agreement permits the removal of Lois and gives the new General Partners one year to pay Lois: (1) a *pro rata* share of JARL assets; (2) cash equal to the value of Lois' 4% interest in JARL; or (3) a combination of assets and cash. Section 12.1 does not call for payment as a condition to removal, nor does it authorize the reinstatement of a removed Partner if payment is not timely received. Section 12.1 prohibits a removed General Partner from participating in the valuation of her interest in the partnership. On its face, Section 12.1 belies the conclusion that removal is contingent upon payment. Thus,

Appellants' second issue does not merit relief. *See Bethlehem Steel, supra.*

██ ¶ 27 In their fifth issue on appeal, Appellants argue Appellees did not request an injunction and, therefore, the court erred when it granted preliminary injunctive relief. Further, Appellants baldly assert the injunction was improvidently granted because Appellees "did not present any evidence of irreparable harm." (Appellants' Brief at 26). Additionally, Appellants' contend the court erred when it granted injunctive relief because "[Appellees] clearly have an adequate remedy at law." (*Id.*) However, Appellants made no attempt to define the remedy.

██ ¶ 28 We review the trial court's decision to grant injunctive relief according to the following principles:

[I]n general, appellate courts review a trial court order refusing or granting a preliminary injunction for an abuse of discretion. We have explained that this standard of review is to be applied within the realm of preliminary injunctions as follows:

[W]e recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were **any apparently reasonable grounds** for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court].

*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 646, 828 A.2d 995, 1000 (2003) (quoting *Roberts v. Board of Dirs. of Sch. Dist.,* 462 Pa. 464,

341 A.2d 475, 478 (1975)) (emphasis added).

 ¶ 29 Additionally, Pennsylvania law states: "[W]here equity assumes jurisdiction for one or more purposes, it will retain jurisdiction for all purposes to give complete relief and to do complete justice between the parties. This may include an award of equitable relief not covered by the original prayer." *Carroll v. Ringgold Educ. Ass'n,* 545 Pa. 192, 205, 680 A.2d 1137, 1144 (1996) (quoting *Armstrong School Dist. v. Armstrong Educ. Ass'n,* 528 Pa. 170, 178, 595 A.2d 1139, 1143 (1991)).

¶ 30 Instantly, the court addressed Appellants' fifth issue as follows:

R.B. 2 is now in bankruptcy. This is the Second Bankruptcy for Louis Fleck's beloved creation, the Red Bull restaurant. The removal of Lois as General Partner of JARL would undoubtedly cause Louis much sorrow and disappointment were he still alive to witness it. However, his sorrow and disappointment would be even greater were he to see how the actions of his obviously beloved wife have once again jeopardized the family wealth by hanging the albatross of R.B. 2's debt over the neck of JARL and its real estate which Louis took such pains to protect.

It appears that all the elements for the grant of preliminary [injunctive] relief are present:

1. [Appellees] have no adequate remedy at law;

2. Immediate and irreparable harm is threatened (Lois has listed both the real estate and restaurant business for sale even though she was lawfully removed as a General Partner of JARL several years ago);

3. Greater harm will occur if preliminary relief is denied than if it is granted;

4. [Appellees] have a high likelihood of success on the merits after a full trial.

(Trial Court Opinion at 7). The court stated reasonable grounds for the preliminary injunctive relief barring Lois from holding herself out as the general partner of JARL. Thus, Appellants' fifth issue warrants no relief.

¶ 31 Based upon the foregoing, we hold the court's declaratory judgment in Appellees' favor, with injunctive relief is sound. Accordingly, we affirm.

¶ 32 Order affirmed.