J-A18039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PRINCE STREET CENTRE SOUTH UNIT OWNERS ASSOCIATION, INC., | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| REDEVELOPMENT AUTHORITY OF THE CITY OF LANCASTER, | : | |
| | : | |
| Appellee | : | No. 2203 MDA 2014 |

Appeal from the Order entered on December 3, 2014
in the Court of Common Pleas of Lancaster County,
Civil Division, No. CI-14-04525

BEFORE:  FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED AUGUST 07, 2015**

Prince Street Centre South Unit Owners Association, Inc. ("Prince Street") appeals from the Order granting the Motion for Judgment on the Pleadings filed by the Redevelopment Authority of the City of Lancaster ("the Redevelopment Authority").  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural background, which we adopt herein for purposes of this appeal. *See* Trial Court Opinion, 1/26/15, 1-5.

On appeal, Prince Street raises the following issue for our review:  "Did the [trial] court [] abuse its discretion in granting [the Redevelopment Authority's] Motion for Judgment on the Pleadings when material facts of law

remain in dispute, without benefit of full discovery or hearing?"  Brief for Appellant at 4 (capitalization omitted).

> The standard of review of a grant of a motion for judgment on the pleadings is limited.  A motion for judgment on the pleadings will be granted where, on the facts averred, the law says with certainty that no recovery is possible.  Since this matter presents a legal question, the scope of review is plenary.

*In re Weidner*, 938 A.2d 354, 358 (Pa. 2007) (internal citations and quotation marks omitted).

Prince Street contends that the trial court erred by granting Redevelopment Authority's Motion for Judgment on the Pleadings because "issues of fact [remain] which must be the subject of discovery and trial." Brief for Appellant at 15.  Prince Street asserts that, in granting the Motion, the trial court focused on the Lease Agreement term "actual cost per parking space to operate and maintain the Garage[,]" but erroneously concluded that whatever the Parking Authority of the City of Lancaster ("Parking Authority") charged the Redevelopment Authority to operate and maintain the garage would be the "actual cost" for purposes of the Lease Agreement. *Id*. at 16-17.  Prince Street contends that the trial court further erred by determining that the Redevelopment Authority "could simply pass on to [Prince Street] whatever the Redevelopment Authority later agreed to pay to [the Parking Authority]." *Id*. at 17.  Prince Street claims that the Parking Authority "may have charged the [] Redevelopment Authority a price that would effectively subsidize other, older and more costly garages." *Id*.

Prince Street asserts that the trial court ignored the Lease Agreement language, which provides that the rent includes base rent as well as insurance, utilities and maintenance, but not a "lump sum" or "manager's fee" charged by a third party to operate and maintain the garage. *Id*. at 20-21. Prince Street argues that the trial court should not have granted judgment on the pleadings because discovery regarding the itemized expenses to be included in the computation of "actual cost" was never completed. *Id*. at 22-23.

Here, the trial court addressed Prince Street's claim, set forth the relevant law, and concluded that the claim lacks merit. *See* Trial Court Opinion, 1/26/15, at 5-10. We agree with the sound reasoning of the trial court and affirm on this basis. *See id*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2015

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**CIVIL ACTION**

PRINCE STREET CENTRE SOUTH
UNIT OWNERS ASSOCIATION, INC.          :
                                       :
          v.                           :          No. CI-14-04525
                                       :
REDEVELOPMENT AUTHORITY                :
OF THE CITY OF LANCASTER               :

**OPINION SUR PA. R.A.P. 1925(a)**

BY:    ASHWORTH, J., JANUARY 26, 2015

Prince Street Centre South Unit Owners Association, Inc. (Association), has filed

a direct appeal to the Superior Court of Pennsylvania from this Court's Order of

December 3, 2014, granting the Motion of Redevelopment Authority of the City of

Lancaster (Redevelopment Authority) for Judgment on the Pleadings and dismissing

the Complaint. This Opinion is written pursuant to Rule 1925(a) of the Pennsylvania

Rules of Appellate Procedure, and for the following reasons, this Court requests that

this appeal be dismissed.

## I.    Background

The Association is a condominium association at 415 North Prince Street, which

formerly leased a surface parking lot in the 400 block of North Market Street from

Prince Street Associates, LP. The Redevelopment Authority acquired the lot from

Prince Street Associates on August 15, 2011, for the purpose of erecting a multi-level

parking garage. On October 18, 2011, the Redevelopment Authority and Prince Street

Associates entered into a Memorandum of Understanding to provide 88 spaces for the

Association in the garage once it was built.[1] (*See* Complaint, Exhibit B.) The relevant

language in the Memorandum is as follows:

2. The Redevelopment Authority will construct a parking facility that provides a minimum of 88 spaces for the Association.
3. If the Redevelopment Authority constructs a parking facility with more than 88 spaces, the Redevelopment Authority, with assistance and agreement from its partner the Lancaster Parking Authority, will construct a lease with the Association that provides access to 88 spaces within the parking facility. It is agreed that these will not be designated spaces within the parking facility.
4. The cost to lease these 88 spaces will be neutral to the Redevelopment Authority. The lease rate will be established by determining the actual cost per space to operate and maintain the parking facility, including utilities, minus the ground level which is reserved for the Lancaster Press Building. The annual rate for the 88 spaces will be equal to this cost. At a minimum, Prince Street Centre South Unit Owners Association, Inc. will pay an annual fee of $17,645 to the Redevelopment Authority for access to 88 spaces.

(Id. at ¶¶ 2-4.) The Association passed a Resolution consenting to the Memorandum of

Understanding on October 27, 2011. (*See* Id., Exhibit B, last page.)

A lease agreement was entered into on June 19, 2012, between the

Redevelopment Authority ("Landlord") and the Association ("Tenant"). (*See* Complaint,

Exhibit A.) The relevant language of the lease is as follows:

3. **Lease of Garage.** Upon completion of construction, Tenant shall lease from Landlord a portion of the Garage representing a minimum of eighty-eight (88) non-designated spaces in the upper -levels of the garage.
4. **Rent.** Tenant shall pay to Landlord rent equal to the actual cost per parking space to operate and maintain the Garage (but shall

---

[1] The Memorandum of Understanding was signed by Eddie P. Drogaris in his capacity as President of Prince Street Associates *and* in his capacity as President of the Association. (*See* Complaint, Exhibit B.)

2

not include interest or principal on any of Landlord's debt service), multiplied by the number of spaces provided by Landlord to Tenant, in an amount not less than Seventeen Thousand Six Hundred Forty-Five Dollars ($17,645.00) annually. The cost of operating and maintaining the lower level of the Garage, which shall be exclusive to Lancaster Press Partners, L.P., or other developer of the Lancaster Press Building, shall not be included in determining Landlord's cost per space.

. . .

6. **Insurance, Utilities and Maintenance.** The intent of the parties is that this Lease represents a 'net' lease, where the rent payable under Section 4 of this part includes base rent as well as insurance, utilities and maintenance.

(Id., Exhibit A, Part II, ¶¶ 3, 4 & 6.)

Thereafter, the Redevelopment Authority had a parking garage constructed on the lot purchased from Prince Street Associates. As set forth in ¶ 3 of the Memorandum of Understanding, the Redevelopment Authority partnered with the Parking Authority of the City of Lancaster (Parking Authority) to manage the garage. On November 15, 2013, the Redevelopment Authority and the Parking Authority entered into a Management Agreement. (*See* Answer, Exhibit A.) The relevant language of the Agreement in ¶ 4 is as follows:

A. [Redevelopment Authority] grants to [Parking Authority] the rights to manage, lease and operate the Managed Spaces and [Parking Authority] accepts the granting of these rights. The Managed Spaces are depicted on Exhibit B, which exhibit is attached hereto and made a part of the Agreement.

B. These rights shall be subject to the terms and conditions of the Prince Street [Memorandum of Understanding], which document is attached as Exhibit C and made a part of this Agreement. [Parking Authority] shall enter into a lease agreement with the Prince Street Centre South Unit Owners Association, Inc. ('Association') per the terms of the Prince Street [Memorandum of Understanding] for eighty-eight (88) of the Managed non-reserved Spaces. This fee is on a[] [Parking Authority] cost of garage operations basis plus management fee modeled after similar costs at other [Parking Authority] garages of comparable

3

size and operation.

. . .

D.    [Parking Authority] shall be responsible for all utilities, routine maintenance, marketing, billing of parking fees, collection of parking fees and insurance as specified below relating to the Managed Spaces.

(Id., Exhibit A at ¶ 4.)  Paragraph 6 of the Agreement also contains additional relevant language as follows:

A.    In addition to the monthly maintenance fee set forth in Section 4(D), [Redevelopment Authority] shall pay [Parking Authority] an annual fee for managing and operating the Managed Spaces to allow [Parking Authority] to break even ('Management Fee').

B.    . . . This target annual revenue number shall be [Parking Authority's] break even number for operating the Managed Spaces. . . .

(Id., Exhibit A at ¶¶ 6(A) & (B).)

The Parking Authority determined that the rate for the 88 managed spaces for the first year would be $45.00 per month.[2]  (See Complaint, Exhibit C.)  On June 12, 2014, the Association filed a complaint seeking a declaratory judgment, arguing that it never agreed to the $45.00 per space charge and that the Redevelopment Authority had no right to "simply contract after the fact with a third party for management services and pretend that whatever [the Redevelopment Authority] agreed to pay the manager would constitute 'costs' as anticipated and described when the lease was signed by the [Association]." (See Plaintiff's Brief In Opposition at 2.)  The Redevelopment Authority filed an answer with no new matter, which closed the pleadings.  The Association filed

---

[2]Following the first year, the Parking Authority's actual cost was to be reviewed and the rate adjusted in light of actual experience. The question of what the rate will be in future years was not before the Court.

4

interrogatories and a request for production of documents, for which answers were served.

The Redevelopment Authority filed a motion for judgment on the pleadings on July 18, 2014. Briefs were filed by the parties and on December 3, 2014, this Court granted the motion and dismissed the Association's complaint. A timely appeal was filed by the Association on December 29, 2014. Pursuant to this Court's directive, a concise statement of matters complained of on appeal was filed on January 20, 2015, which raises just one issue: whether the Court abused its discretion and/or committed an error of law by granting judgment on the pleadings.

## II.    Standard of Review

Rule 1034 of the Pennsylvania Rules of Civil Procedure governs motions for judgment on the pleadings and provides that "[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings." Pa. R.C.P. 1034(a). On a motion for judgment on the pleadings, which is similar to a demurrer, the court accepts as true all well-pleaded statements of fact of the non-moving party, but only those facts specifically admitted by the non-movant may be considered against him. **Coleman v. Duane Morris, LLP**, 58 A.3d 833, 836 (Pa. Super. 2012) (*citing* **Wachovia Bank, N.A. v. Ferretti**, 935 A.2d 565, 570 (Pa. Super. 2007)). Further, "neither party will be deemed to have admitted conclusions of law." **Mellon Bank, N.A. v. National Union Fire Insurance Co. of Pittsburgh**, 768 A.2d 865, 868 (Pa. Super. 2001).

5

In ruling on a motion for judgment on the pleadings, the court should confine itself to the pleadings, such as the complaint, answer, and any documents or exhibits properly attached to them. **Coleman**, *supra* at 570. Such a motion may only be granted in cases where no material facts are at issue and the law is so clear that a trial would be a fruitless exercise. Id.

Initially, the Association took the position that judgment on the pleadings is not available in a declaratory judgment action, citing a 1979 Common Pleas decision from Luzern County, **Jefferson Insurance Co. of New York v. Cook**, 10 D.&C.3d 402 (1979). It is correct that

> [p]rior to the enactment of the present Declaratory Judgments Act, 42 Pa.Cons.Stat.Ann. §§ 7531-41 (1982), declaratory judgments in Pennsylvania were governed by the Uniform Declaratory Judgments Act, 12 P.S. §§ 831-46 (1923) (repealed 1978), and the specific procedures were governed by a supplemental procedure Act, 12 P.S. §§ 847-53 (1935) (repealed 1978). In construing these Acts, our courts had held that certain kinds of summary disposition, including summary judgment or judgment on the pleadings, could not be had in declaratory judgment actions because the Acts themselves made no provision therefor.

**Darlark v. Henry S. Lehr, Inc.**, 360 Pa. Super. 509, 511-12, 520 A.2d 1206, 1207 (1987), *overruled on other grounds by* **Mother's Rest. Inc. v. Krystkiewicz**, 861 A.2d 327 (Pa. Super. 2004).

However, the present practice and procedure in declaratory judgment actions "shall follow, as nearly as may be," the rules relating to an action in assumpsit. Pa. R.C.P. 1601(a). Such rules, of course, do provide for a motion for judgment on the pleadings. *See* Pa. R.C.P. 1034. *See also* **Southwestern Energy Production Co. v. Forest Resources, LLC**, 83 A.3d 177, 184 (Pa. Super. 2013) (judgment on the

6

pleadings in declaratory judgment action); **Old Guard Ins. Co. v. Sherman**, 866 A.2d

412, 413 (Pa. Super. 2004) (same); **Pulleyn v. Cavalier Ins. Corp.**, 351 Pa. Super.

347, 348, 505 A.2d 1016, 1017 (1986) (same).

Thus, judgment on the pleadings is available in a declaratory judgment action.

Moreover, when a question involves purely a construction of written documents, as is

the case here, the matter is a question of law and is amenable to judgment on the

pleadings. *See* **Jarl Investments, L.P. v. Fleck**, 937 A.2d 1113, 1122 (Pa. Super.

2007).

## III.  Discussion

The controversy in this case centered on the Association's obligation to pay the

Redevelopment Authority "the *actual cost* per parking space to operate and maintain

the garage" where its 88 parking spaces are leased. (*See* Memorandum of

Understanding at ¶ 4 (emphasis added).) The Association claims there were material

facts in dispute relating to the elements of "actual cost," which required the Court to

conduct a hearing as to the "itemization and analysis of the components of what is

charged." (*See* Statement of Errors at 2.) The Redevelopment Authority's position was

that the Lease Agreement, which was clear and unambiguous with regard to the term

"actual cost," controlled in this case, and further that the Agreement between the parties

contained an integration clause which precluded parol evidence and limited the scope

of the Court's inquiry to the Agreement itself.[3] (*See* Complaint, Exhibit A at ¶ 11.)

---

[3]"An integration clause which states that a writing is meant to represent the parties' entire agreement is . . . a clear sign that the writing is meant to be just that and thereby

7

Section 7533 of the Declaratory Judgments Act specifically provides that

interpretation of contract rights between the parties is the subject of declaratory relief:

> § 7533. Construction of documents
> Any person interested under a . . . written contract, or other writings
> constituting a contract, or whose rights, status, or other legal relations
> are affected by a . . . contract, . . . may have determined any question
> of construction or validity arising under the . . . contract, . . . and obtain
> a declaration of rights, status, or other legal relations thereunder.

42 Pa. C.S.A. § 7533. "The interpretation of a contract is a question of law." **Halpin v.**

**LaSalle University**, 432 Pa. Super. 476, 481, 639 A.2d 37, 39 (1994).

> When interpreting a contract, the court's paramount goal is to ascertain
> and give effect to the intent of the parties as reasonably manifested by
> the language of their written agreement.
> > When the words used in a contract are ambiguous, a court may
> > examine the surrounding circumstances to ascertain the intent of
> > the parties. When the language of a writing is clear and unequivocal,
> > however, its meaning must be determined by its contents alone. . . .
> > When determining whether a contract is ambiguous, a court must
> > view the contract as a whole and not in discrete units.
> A court may not disregard a provision in a contract if a reasonable
> meaning may be ascertained therefrom. In construing a contract, each
> and every part of it must be taken into consideration and given effect, if
> possible, and the intention of the parties must be ascertained from the
> entire instrument. The intention of the parties is paramount and the
> court will adopt an interpretation which under all circumstances ascribes
> the most reasonable, probable, and natural conduct of the parties,
> bearing in mind the objects manifestly to be accomplished.

**Jarl Investments**, *supra* at 1122 (*quoting* **Bethlehem Steel Corp. v. MATX, Inc.**, 703

A.2d 39, 42 (Pa. Super. 1997) (internal citations and quotations omitted). Moreover,

"[a] contract is not ambiguous merely because the parties do not agree on its

---

expresses all of the parties' negotiations, conversations, and agreements made prior to its
execution." **Yocca v. Pittsburgh Steelers Sports, Inc.**, 578 Pa. 479, 498, 854 A.2d 425, 436
(2004).

8

construction." **Seven Springs Farm, Inc. v. Croker**, 748 A.2d 740, 744 (Pa. Super. 2000), *aff'd*, 569 Pa. 202, 801 A.2d 1212 (2002).

In opposing the judgment on the pleadings, the Association argued that "[i]f there is any possibility that 'cost' could mean something at variance with the terms of the lease, the Court would have to hear and consider evidence and create a factual record and not grant judgment peremptorily to [the Redevelopment Authority] as a matter of law." (*See* Plaintiff's Brief in Opposition at 3.) I found the term "actual cost" to be clear and unambiguous, and consistently set forth in the documents at issue in this case. Accordingly, this Court solely interpreted the relevant contracts, without consideration of the attendant circumstances.

The Association, the Redevelopment Authority and Prince Street Associates agreed in the October 18, 2011, Memorandum of Understanding that 88 spaces would be provided at a "cost neutral" basis to the Redevelopment Authority. (*See* Complaint, Exhibit B at ¶ 4.) The lease entered into between the Association and the Redevelopment Authority provided that 88 spaces would be provided at a rent equal to the actual cost per parking space. (*See* Id., Exhibit A at ¶¶ 4, 6.) The Management Agreement with the Parking Authority and the Redevelopment Authority specifies how the Parking Authority's fee will be determined. (*See* Answer, Exhibit A at ¶ 6b.) This fee is passed through, on a cost neutral basis, as agreed, to the Association. (*See* Complaint, Exhibit C.)

While the Association objected that it "never requested nor required the third party Lancaster Parking Authority's involvement" (*see* Plaintiff's Brief in Opposition at

9

2), the Lease between the Association and the Redevelopment Authority did not prohibit using the Parking Authority to manage the garage, and this was the disclosed intent of the Redevelopment Authority. (*See* Complaint, Exhibit B at ¶ 3.) The Redevelopment Authority had the legal right to engage the Parking Authority for the purpose of managing the garage, and exercised its sound discretion in doing so.

The rate to be charged for the Association's 88 spaces was made clear in the Memorandum of Understanding. Reading paragraphs 3 and 4 of the Memorandum together, the Association agreed as early as October 27, 2011, that (1) the Parking Authority would be involved in the management of the garage, and (2) the rate that the Redevelopment Authority would charge the Association would be cost neutral to the Redevelopment Authority. To be cost neutral, the Redevelopment Authority had to charge the Association what the Parking Authority charged the Redevelopment Authority, which is currently $45.00 per month per space, a rate which is substantially below the rate that the Parking Authority advertises parking spaces at in other garages in the City of Lancaster, and for public parking in the same garage. (*See* Answer at ¶ 22.)

As there were no material facts at issue and the law was so clear that a trial would be a fruitless exercise, I granted the Redevelopment Authority's motion for judgment on the pleadings and dismissed the Association's complaint for declaratory judgment.

10

## IV.    Conclusion

For the reasons set forth above, this Court's Order of December 3, 2014, granting the Motion of the Redevelopment Authority for Judgment on the Pleadings and dismissing the Complaint for Declaratory Judgment by the Association should be affirmed and this appeal dismissed.

Accordingly, I enter the following