J-A08013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KEYSTONE CARE ADMINISTRATIVE SERVICES, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRUCE GROSSINGER, D.O., | |
| Appellant | No. 1051 EDA 2015 |

Appeal from the Judgment Entered March 9, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 06-04049

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 21, 2016**

Bruce Grossinger, D.O. ("Physician") appeals from the March 12, 2015 judgment entered in favor of Keystone Care Administrative Services, Inc. ("KCAS") following a non-jury trial.[1]  After thorough review, we affirm.

KCAS, a third-party claims administrator for insurance companies, entered into two retainer agreements with Physician in which it agreed to prepay him in anticipation of professional services he would provide for

---

[1]  Physician purported to appeal from the March 9, 2015 order denying him post-trial relief and granting KCAS's petition for attorneys' fees and interest. The appeal is proper from the judgment, which was entered on the docket on March 12, 2015, not the denial of post-trial relief.  We have amended the caption accordingly.

---

*  Retired Senior Judge assigned to the Superior Court.

certain personal injury cases. The prepayment arrangement was designed to assist KCAS in procuring medical expert services on behalf of a financially ailing Legion Insurance ("Legion"), in anticipation of its release from rehabilitation.[2]

Physician's counsel drafted the first agreement on or about November 1, 2002. It recited that KCAS had received permission and funds from Legion, then in rehabilitation, "to engage duly qualified physicians to provide medical services for certain individuals identified by KCAS" and "to compensate Physician prior to the delivery of such Services." Agreement, 11/1/02, at 1. Paragraph 7 of the Agreement, entitled Compensation, provided that, "KCAS had provided Physician with the Funds as payment **in advance** for the provision of the Services" with the "Amounts to be earned by the Physician upon completion of the Services for each individual identified." *Id*. at 4 (emphasis original). The term of the agreement was one year or until the Physician's completion of services with respect to all cases listed, whichever occurred first.

---

[2] Rehabilitation and liquidation involve the take-over of an insurance company's assets and operations by the State Insurance Commissioner when the company's annual report reveals it is in substantial financial difficulty. Where the Commissioner believes that it is possible to save the company, it generally orders rehabilitation. When the company is deemed unsalvageable, liquidation is ordered.

The second agreement was drafted on February 26, 2003, bearing an effective date of March 1, 2002, but executed one year later. Under its terms, Physician was retained to provide depositions and trial testimony if needed in certain designated cases. Again, the funds were characterized as "payment **in advance**" for the provision of deposition and expert witness testimony. Agreement, 3/1/03, at ¶7 (emphasis original). While the agreements are quite similar, the second agreement additionally provided that "KCAS may request that Physician return certain of the Funds, as the services contemplated hereunder may not be required for a given case." *Id*. at ¶2c. It further provided that "Physician shall be obligated to return those amounts requested by KCAS, within a reasonable time period, so long as Physician shall not have furnished Services in connection with such case prior to the request." *Id*. The agreement would "automatically terminate upon the earlier of (i) the provision of Services by Physician with respect to all cases" or (ii) a period of two (2) years." *Id*. at ¶6a.

Legion went from rehabilitation to liquidation and Physician provided no services under either agreement. By letter dated April 8, 2004, KCAS asked Physician to remit the prepayments but Physician did not comply with the demand. KCAS commenced this contract action in March 2006 to recover the $77,500 it prepaid Physician under the two agreements, together with attorney's fees and interest due to Physician's breach.

Physician filed an answer and new matter to the complaint on March 31, 2006, in which he admitted that he signed the agreements and received prepayments totaling $77,500. He alleged, however, that he performed services ancillary to those identified in the agreements, the value of which exceeded the amount in controversy. Furthermore, Physician pled that he suffered a loss of income because he declined other business in order to set aside dedicated hours for the performance of services under the agreements that failed to materialize. Answer and New Matter, 3/31/06, at ¶7. He asserted a counterclaim for $3,500, which he subsequently reduced to $2,500.

During the course of discovery, KCAS filed several successful motions to compel Physician to provide answers to interrogatories and responses to requests for production of documents. In opposition to KCAS's motion to compel Physician's deposition, Physician maintained that his deposition should be delayed to permit him to investigate his theory that the agreements herein were calculated to defraud first the insurance carrier, and then the state liquidator, and that they were void or voidable as against public policy. By order entered April 19, 2011, the court granted KCAS's motion to compel the deposition of Physician.

On November 23, 2011, Physician filed an "Amended Motion to Amend Defendant's New Matter," representing therein that he had only become aware of the fact that KCAS executed similar prepaid services agreements

with lawyers and other doctors, the purpose of which was to exhaust deductibles KCAS had with Legion and Villanova Insurance Companies. He asserted that KCAS was a defendant in lawsuits filed by Legion and the Pennsylvania State Guaranty Fund to recoup the monies paid out under these agreements, raising the question whether KCAS was the real party in interest in this case. Furthermore, Physician asserted that KCAS used the prepayments as deductible offsets, and argued that it was fraudulent for that entity to sue for the return of the prepayments. Physician sought leave to amend his new matter to plead KCAS's lack of standing and to assert that it was not the real party in interest.

In opposition to the proposed amendment, KCAS denied that it was artificially exhausting deductibles or receiving any offset. Moreover, it averred that Legion was in liquidation and that the insurance commissioner was not suing to recoup these monies. Additionally, KCAS contended that Physician leveled this same charge in correspondence dated March 23, 2006, prior to filing its original answer and new matter, which was proof that Physician had long known of this issue but failed to timely plead it. KCAS contended that since Physician did not file preliminary objections or plead it in his answer, the issue was waived. Furthermore, KCAS asserted that it would suffer prejudice if Physician was permitted to amend and raise the defenses five years into litigation as it would have to re-engage in discovery

on these new issues and the associated delay would reduce the likelihood of a disposition by the statutory liquidator.

By order dated May 1, 2011, the trial court denied the Physician's motion to amend his new matter, and litigation proceeded. KCAS served requests for admissions upon Physician on September 2, 2011. The Physician forwarded responses on September 23, 2011, but they were not personally verified by him as required by Pa.R.C.P. 4014(b). KCAS twice requested that the defense provide the proper verification. Defense counsel agreed on December 1, 2011 to provide Physician's verification. When no verification was supplied, counsel for KCAS made a third request on March 21, 2012. Ultimately, KCAS filed a motion to determine the sufficiency of the answers pursuant to Pa.R.C.P. 4014, and asked the court to order the matters in the requests to be deemed admitted. The court issued a rule to show cause directed to Physician, to which Physician did not respond. On May 11, 2012, the trial court found that Physician failed to verify his answers to requests for admissions as required under Pa.R.C.P. 4014, and ordered that all of the requests be deemed admitted.

On June 11, 2012, KCAS filed a motion for summary judgment. It alleged that there was no genuine issue of material fact in light of the deemed admissions and Physician's admissions during his deposition. KCAS sought judgment in its favor in the amount of $77,500, together with legal interest from October 1, 2004, and attorney's fees. Physician filed a cross-

motion for summary judgment on his $2,500 counterclaim, together with interest and counsel fees. Following argument on the motions, the trial court granted partial summary judgment in favor of KCAS as to claims and defenses related to an alleged scheme to artificially exhaust deductibles only, and denied Physician's motion.

On September 24, 2014, following a non-jury trial, the court entered a $77,500 verdict in favor of KCAS. KCAS sought attorney's fees, costs, and interest. Physician filed a timely motion for post-trial relief alleging that: the verdict was against the weight of the evidence; the trial court erred in limiting its defenses; KCAS did not have standing to pursue the remedy; he should have been permitted to amend to plead that KCAS was not the real party in interest as that defense related to jurisdiction; KCAS's demand for return of the money was untimely; KCAS was not entitled to prejudgment interest or attorney's fees under the agreements; and the trial court erred in denying his counterclaim.

The court granted the motion on Physician's $2,500 counterclaim, but denied it as to his remaining claims. It also granted KCAS's petition for counsel fees and expenses, and amended the verdict to reflect an award of $74,000, plus interest from October 1, 2004, together with attorney's fees of $84,318.22. Order, 3/2/15. By order dated March 9, 2015, the court corrected a clerical error and entered a verdict in favor of KCAS in the amount of $75,000 plus interest. KCAS filed a praecipe for entry of

judgment on March 12, 2015, and Physician timely appealed. He presents

nine issues for our review:

1. Whether the trial court erred in precluding [Physician] from presenting a real party in interest defense at trial.

2. Whether the trial court erred in finding that all material facts were deemed admitted because [Physician] failed to verify the written responses and objections served on KCAS in response to KCAS' Request for Admissions when [Physician] verified the response prior to KCAS' Motion for Summary Judgment and trial and it would be against the merits to have the admissions deemed admitted.

3. Whether the trial court erred in finding that KCAS's demand for return of money under the Agreements did not need to be made before the expiration of the subject Agreements.

4. Whether the trial court erred in discrediting [Physician's] testimony about services provided and as a result determining that he did not perform work in accordance with the contract.

5. Whether the trial court erred in failing to consider and credit the doctrine of necessary implication and good faith and fair dealing.

6. Whether the trial court erred in determining that the indemnification provision of the Agreements permitted recovery of legal fees in a dispute between the parties of the Agreements.

7. Whether the trial court erred in determining KCAS was entitled to attorney's fees when the evidence presented at the post trial hearing on December 12, 2014 failed to establish that KCAS incurred, paid or had any obligation to pay any legal fees.

8. Whether the trial court erred in finding that KCAS was entitled to recover interest, including prejudgment interest on its judgment.

9. Whether the trial court erred in not awarding attorney's fees and interest on [Physician's] successful counterclaim.

Appellant's brief at 10-11.

Our scope of review of a non-jury trial is limited to whether findings of fact are supported by competent evidence and whether the trial court committed an error of law. *Szymanski v. Dotey*, 52 A.3d 289 (Pa.Super. 2012). Regarding the trial court's factual conclusions, we may reverse only if the "findings of fact are predicated on an error of law or are unsupported by competent evidence in the record." *Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 518 (Pa.Super. 2009).

Physician initially argues that the trial court erred in denying him leave to amend his new matter to assert the defense that KCAS lacked standing and was not the real party in interest. KCAS counters that this issue is waived for two reasons: 1) Physician did not timely appeal the ruling in 2011; and 2) it was not asserted in Physician's motion for post-trial relief. KCAS cites *City of Philadelphia v. Spencer*, 591 A.2d 5, 7 n.1 (Pa.Cmwlth. 1991), *Mineo v. Tancini*, 536 A.2d 1323 (Pa. 1988), and *Hull v. Tolentino*, 536 A.2d 797 (Pa. 1988), for the proposition that an order foreclosing assertion of an affirmative defense involving issues of fact as well as law was immediately appealable.

We find KCAS's reliance upon *Hull*, *Mineo*, and *City of Philadelphia* misplaced as those cases were decided prior to the 1992 amendment of

- 9 -

Pa.R.A.P. 341. Under the present version of the rule, an appeal is proper from an order denying leave to amend only if it disposes of all claims and all parties, which was not the case herein. KCAS's claim of waiver based on the lack of specificity in the motion for post-trial relief fares no better. Physician alleged that the trial court erred when it limited the defenses he could pursue. Since this was presumably a reference to the court's denial of Physician's motion to amend to plead that KCAS lacked standing to maintain this action and was not the real party in interest, we decline to find waiver where the gist of Physician's claim could be discerned from the motion.

We turn now to the merits of Physician's first issue. Physician contends that although standing and real-party-in-interest are defenses generally raised by preliminary objection or new matter, he should have been permitted to amend his new matter to include these defenses. He cites Pennsylvania's liberal policy of permitting amendment of the pleadings and argues that Pa.R.C.P. 1033 authorized the court to permit such amendment unless unfair surprise or prejudice to the other party would result, or the proposed amendment would contravene the law. Appellant's brief at 21. Physician contends that KCAS was aware early on in the litigation that he questioned whether it was the real party in interest, and hence, could not have been surprised or prejudiced by the proposed amendment.

KCAS correctly cites *Huddleston v. Infertility Center of America, Inc.*, 700 A.2d 253 (Pa.Super. 1997), for the proposition that Physician's

objection to standing is waived as it was not raised by preliminary objection or in the answer to the complaint. Furthermore, KCAS proffered correspondence from Physician authored prior to the filing of Physician's answer in which he leveled the charge that KCAS was not the real party in interest to refute Physician's contention that he did not know of the facts supporting this claim when he filed his original answer. KCAS maintains that having failed to timely assert the claim, it is waived. Moreover, according to KCAS, it demonstrated to the trial court that the timing of the motion seeking leave to amend prejudiced it in its proceedings with the state insurance commissioner. Finally, KCAS contends that, although Physician was not granted leave to amend to challenge its standing and status as the real party in interest, the trial court addressed the merits of the contention and properly found it lacked merit.

The law is well-settled that, "Leave to amend lies within the sound discretion of the trial court and the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party." **Hill v. Ofalt**, 85 A.3d 540, 557 (Pa.Super. 2014). The trial court found that Physician waived any challenge to standing/real party in interest by failing to preliminarily object on that

basis. ***See*** Pa.R.C.P. 1028(a)(5).[3] Nonetheless, the trial court examined the issue on its merits and found that KCAS had standing to pursue this breach of contract action by virtue of its status as a contracting party. It was the real party in interest because it suffered pecuniary loss regardless of whether it had any obligation to transfer the funds to another entity.

First, we observe that the real-party-in-interest rule is merely a rule of procedure and does not alter the substantive rights of the parties. ***Spires v. Hanover Fire Insurance Co.***, 70 A.2d 828 (Pa. 1950), *overruled on other grounds*, ***Guy v. Liederbach***, 459 A.2d 744 (Pa. 1983). It is not an affirmative defense enumerated in Pa.R.C.P. 1030, and should generally be raised by preliminary objection rather than new matter. Furthermore, standing is not jurisdictional, and if not timely raised, it is waived. ***In re Estate of Alexander***, 758 A.2d 182, 189 (Pa.Super. 2000). Thus, Physician's claim that he should have been granted leave to amend his new matter to assert defenses that are properly raised by preliminary objection misses the mark. Regardless, the trial court addressed the issue and found it to be without merit, and thus, any alleged error in the court's refusal to

---

[3] Pa.R.C.P. 1028 provides in pertinent part:

> (a)  Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
>
>> . . . .
>> (5)  lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action;

permit the amendment is of no consequence. We agree with the trial court's disposition for the reasons that follow.

Generally, a party who is aggrieved has standing. *See Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009). "A party who is not negatively affected by the matter he seeks to challenge is not aggrieved, and thus, has no right to obtain judicial resolution of his challenge." *In re Milton Hershey Sch.*, 911 A.2d 1258, 1261-1262 (Pa. 2006). As our High Court noted in *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003), "A litigant is aggrieved when he can show a substantial, direct, and immediate interest in the outcome of the litigation[,]" substantial meaning "a discernable adverse effect to an interest other than that of the general citizenry." *Id*. at 1262.

Even assuming that KCAS prepaid Physician with money supplied by Legion, KCAS, as a party to the contract, is an aggrieved litigant. In arriving at its conclusion that the proposed amendment would not afford a basis for relief, the trial court relied upon *Collins v. Allstate Indem. Co.*, 626 A.2d 1162 (Pa. 1993). The plaintiffs in *Collins*, insureds under various motor vehicle insurance policies, commenced actions to recover unpaid no-fault medical benefits, interest accrued thereon, and attorney's fees. The insurers challenged the plaintiffs' standing to maintain the actions because Medicare was entitled to reimbursement of any benefits recovered as it had paid their medical bills. Insurers maintained that the cause of action for the no-fault

benefits actually belonged to the federal government, which was the real party in interest, not the plaintiffs, and that since plaintiffs' medical bills were timely paid by Medicare, they were not "aggrieved" by the non-payment of no-fault benefits.

Our High Court found that the right of reimbursement did not render Medicare the real party in interest in the contract action. Even though the plaintiffs were statutorily required to reimburse the federal government, the Court found that obligation did not alter the fact that the case involved a contractual relationship among the plaintiffs and the defendant insurers. Since the plaintiffs paid money to the insurers in exchange for coverage for medical expenses, the insurers were contractually obligated to pay for those expenses, and plaintiffs suffered pecuniary loss regardless of any claim to those benefits by a third party. Additionally, the plaintiffs' claims to interest and attorney's fees provided were sufficiently direct and pecuniary to establish standing.

Applying the *Collins* rationale, the trial court herein first noted that KCAS's right to repayment derived from the agreements between Physician and KCAS. KCAS thus had a pecuniary interest in the refund of its prepayments, interest thereon, and attorney's fees that "imbued KCAS with the requisite authority to pursue the instant litigation to enforce its contractual rights, and discharge the claim upon payment." Trial Court Opinion, 8/20/15, at 21. We agree with the trial court that KCAS had the

requisite standing to institute suit for breach of contract, that KCAS was the real party in interest, and that Physician's claim lacks merit.

Next, Physician alleges the trial court erred in deeming admitted the requests for admissions based on the lack of his personal verification. His appellate argument, however, is not directed at the propriety of the trial court's imposition of sanctions in the nature of deemed admissions. Rather, he cites Pa.R.C.P. 4014(c), and represents that, since he provided verified answers two years prior to trial and made a request to withdraw his admissions pursuant to Pa.R.C.P. 4014(d) in his summary judgment motion, the trial court erred in not permitting the withdrawal of the admissions. Appellant's brief at 27. KCAS disputes that Physician ever made a withdrawal motion. Appellee's brief at 31.

The record supports KCAS's representation of the facts. In his response in opposition to summary judgment, Physician stated that "Simultaneously with this filing, Defendant's counsel is filing a request for Reconsideration of the Order deeming the requests admitted and therefore certainly action on the instant Motion should be denied until that Motion is decided." Defendant's Reply to Plaintiff's Motion for Summary Judgment, 7/11/12, at 4 ¶26. However, the certified record does not contain a motion for reconsideration of the order or a request to withdraw or amend the admissions pursuant to Pa.R.C.P. 4014(d). Since Physician did not move to withdraw his deemed admissions, Pa.R.C.P. 4014 was not triggered and

- 15 -

cannot serve as the basis for alleged trial court error. Additionally, on appeal Physician does not develop his argument that the trial court abused its discretion in imposing sanctions in the nature of deemed admissions; thus, any claim in this regard is waived. Pa.R.A.P. 2119; **see also Jarl Invs., L.P. v. Fleck**, 937 A.2d 1113 (Pa.Super. 2007) (arguments deemed waived on appeal where no argument presented in the brief).

Physician's third claim is that the action is barred as the time expired to request repayment under the agreements before KCAS made its demand. Physician alleges that the agreements herein provided for automatic termination upon the earlier of two events: either the provision of services by Physician with respect to all cases listed in Exhibit A, or a period of two years, in the first agreement, and one year, in the second agreement. Furthermore, although Paragraph 2c of the second agreement provided that KCAS could request return of unused funds, Physician maintains that there was no contractual language in that agreement indicating that this provision survived the termination of the agreement. According to Physician, the only language in the second agreement that could arguably impose an obligation to remit funds for services not rendered was paragraph 6b, which provided that either party could terminate the agreement without cause, and, in that event, Physician would be obligated to remit all funds for services that were not rendered to individuals listed as of the date of termination. Since the

parties did not terminate under 6b, Physician continues there was no contractual language requiring him to remit unearned monies.

KCAS counters that both agreements provided that Physician was being paid in advance. **See** Agreement, 11/1/02, at ¶7(a); Agreement, 3/1/03 at ¶7. The second agreement also provided that "From time to time, KCAS may request that Physician return certain of the Funds, as the Services contemplated hereunder may not be required for a given case." Agreement, 3/1/03, at ¶2c. "Physician shall be obligated to return those amounts requested by KCAS, within a reasonable time period, so long as Physician shall not have furnished Services in connection with such case prior to the request." **Id**. Again, it is recited therein that the funds are payment in advance for the provision of services. **Id**. at ¶7.

KCAS counters that the breach of contract claim did not ripen until the time for performance expired since, until then, Physician could potentially have earned the prepayments or voluntarily reimbursed KCAS for the unearned prepayments. The trial court agreed with that interpretation and found that the contract's termination provisions did not extinguish KCAS's claims for reimbursement of prepayments that were not earned as of that date.

Physician presents an issue of contract interpretation, which is a question of law. **Jarl Invs., L.P.** , **supra**. Thus, our scope of review is *de novo* and our standard of review is plenary. **Bair v. Manor Care of**

*Elizabethtown, PA, LLC*, 108 A.3d 94 (Pa.Super. 2015). It is apparent from the agreements that Physician was prepaid for services that it was anticipated he would be called upon to perform with regard to certain personal injury cases, but was also obligated to return unearned amounts within a reasonable time after a request to do so. The second agreement provided that KCAS could request that Physician return certain of the funds, in writing, in accordance with requirements of Section 11, which provided: "Physician shall be obligated to return those amounts requested by KCAS, within a reasonable time period, so long as Physician shall not have furnished Services in connection with such case prior to the request." Paragraph 2c. Hence, the contract did not put a time limit on KCAS's request for refund on unearned money.

Physician conflates the expiration of the term of the contract with the time to request a refund of unearned prepayments. Although the term for Physician's performance of services under the contract expired, either party could sue for breach within the applicable statute of limitations. This claim is without merit.

Next, Physician alleges that the trial court erred in determining that Physician did not perform any work contemplated in the Agreements that would have entitled him to payment. We view this as a challenge to the trial court's factual conclusions, and hence, "we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by

competent evidence in the record." ***Step Plan Servs. v. Koresko***, 12 A.3d 401, 408 (Pa.Super. 2010). If there is any support in the record for the verdict, we must affirm.

Although Physician testified at trial that he set aside two to three days per week during the first three to six months of the contract to do the work that never materialized, he admitted that he "did not provide written documentation to KCAS with respect to any professional services provided within thirty (30) business days of performing the services, as required by paragraph E.2.c., page 2 of the November 1, 2002 Professional Services Agreement." Request for Admission No. 15. Furthermore, at trial, the court asked defense counsel, "Is there any factual dispute with regard to the fact that [Physician] did no work on those files?" Defense counsel responded, "No, Your Honor." N.T. Trial, 9/12/14, at 3. KCAS's witnesses testified that none of the files was sent to Physician and that he did not perform any record reviews, independent medical examinations ("IMEs"), or provide any testimony regarding the individuals identified, and confirmed that Physician never documented in writing any professional services allegedly provided.

The record supports the trial court's finding that Physician did not perform any services contemplated by the agreements. "Services" was defined in the first agreement as "the provision of Independent Medical Examinations ("IMEs") and review(s) of medical records" of certain individuals. Agreement, 11/1/02, at 2 ¶2(a). Under the second agreement,

"services" was defined as deposition and trial testimony. Physician's own testimony confirmed that he did not provide any services as that term is defined in either of the agreements.[4] Thus, we find no merit in Physician's claim that he was entitled to payment under the contracts.

In his fifth issue, Physician alleges that the trial court erred in failing to consider and credit the doctrine of necessary implication and good faith and fair dealing. The doctrine of necessary implication imposes a requirement of good faith in the performance of contractual duties. *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa.Super. 1992); *Frickert v. Deiter Bros. Fuel Co., Inc.*, 347 A.2d 701 (Pa. 1975) (Pomeroy, J., concurring). That doctrine has been stated as follows:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

*Somers*, *supra*, at 1214. It does not, however, trump the express provisions of the contract.

*Frickert* involved a shareholder agreement intended to ensure that certain key employees would succeed to ownership in equal shares in a

---

[4] Physician's successful counterclaim for $2,500, representing payment for a deposition in a workers' compensation matter, was not a service contemplated within the agreements herein.

closely-held corporation. One of the owners frustrated that intent when he transferred his corporate shares to his sons during his lifetime. The court held that, although the gift was not expressly prohibited in the agreement, it violated the implied duty of the contracting parties to "act according to reason and justice." *Frickert*, *supra* at 1214.

As this Court recognized in *John B. Conomos, Inc. v. Sun Co.*, 831 A.2d 696 (Pa.Super. 2003), the law "will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Id*. at 706. We view the implied covenant as a means "to harmonize the reasonable expectations of the parties with the intent of the contractors and the terms in their contract." *Id*. at 707.

Physician contends that it was implied in the contract that KCAS would give him the work described in the contract. He stood ready to perform, but KCAS frustrated his performance. KCAS counters that the agreements expressly stated that Legion was in rehabilitation, and further, it advised Physician that all court cases were stayed, and that no cases would be sent until the stay was lifted, an event that never occurred.

We note preliminarily that Physician did not file a counterclaim for breach of contract based on the duty of good faith and fair dealing. Even if

he had, it would not entitle him to relief. The agreements simply did not guarantee that Physician would receive cases. It was recited therein that Legion was in rehabilitation. Furthermore, it was acknowledged that Physician might not be called upon to perform all of the services, and in that event, he would be required to return the unearned payments.

The instant case is not about Physician's failure to satisfactorily perform case reviews, IMEs, or provide deposition or trial testimony. It is about his refusal to remit the monies he was paid and that he agreed to return if he did not provide services on the delineated cases. The parties contracted with the belief that the stay would be lifted and KCAS would send certain cases to Physician. It is undisputed that the stay was never lifted and that Legion went into liquidation. Both agreements provided that Physician was being prepaid for anticipated services, and that if Physician did not perform the services, he would remit the unearned prepayments. Although Physician did not perform any of the services for which he was prepaid, he refused to return the unearned prepayments. This claim fails.

Next Physician alleges that the indemnification provision did not apply to first party claims, and thus, the trial court erred in permitting KCAS to recover its legal fees. In support of his position, he relies upon the dictionary definition of indemnification, and cites *Jalapenos, LLC v. GRC Gen Contractor, Inc.*, 939 A.2d 925 (Pa.Super. 2007), and authorities from other states and the federal courts for the proposition that an indemnity

clause typically covers only claims by third parties against an indemnitee. Physician asserts that the indemnity provisions in the agreements were designed to protect him from claims of Legion and third parties, not to subject him to attorney's fees and costs upon a finding of breach. Paragraph 12(g). He argues that under KCAS's proposed construction, he would also be entitled to attorney's fees for defending the lawsuit as there is nothing that limits indemnification to the prevailing party.

The indemnification provision states:

> <u>Indemnification</u>. Each party agrees to fully, completely and unconditionally indemnify, defend, and hold the other party harmless from and against any and all claims, actions, liabilities, losses, costs and expenses (including, without limitation, costs of judgments, settlements, court costs and attorney's fees) arising out of or relating to, or alleged to arise out of or relate to, negligent or intentional acts or omissions of the indemnifying party or any breach by the indemnifying party of any representation, warranty, obligation or covenant under this Agreement. KCAS also agrees to indemnify Physician from any and all actions that may be taken by or on behalf of Legions Insurance Company in Rehabilitation with respect to the Funds.

Agreement, 11/1/02, at ¶12d; Agreement, 3/1/03, at ¶12g.

Under our American Rule, parties usually bear their own costs of litigation, including attorney's fees. However, a litigant can recover counsel fees from an adverse party where there is express statutory authorization, a clear agreement of the parties, or some other established exception. *Trizechahn Gateway LLC v. Titus, et al.*, 976 A.2d 474, 482 (Pa. 2009) *rev'd in part on other grounds*, 976 A.2d 474 (Pa. 2009); **see also**

*Waynesborough Country Club of Chester County v. Diedrich Niles Bolton Architects, Inc.*, 2008 U.S. Dist. LEXIS 93395 (E.D. Pa. 2008) (enforcing unambiguous contractual provision allowing plaintiff to recover "'expenses including reasonable attorneys' fees' arising from 'any breach or default' of the [agreement] or from 'a negligent act, error or omissions of [defendant] arising out of the performance or failure to perform professional services under' the contract"). At issue herein is the meaning and scope of the indemnification clause in the parties' agreements.

"In interpreting the scope of an indemnification clause, the court must consider the four corners of the document and its surrounding circumstances." *County of Del. v. J.P. Mascaro & Sons*, 830 A.2d 587, 591 (Pa.Super 2003); *see also Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) ("[T]he words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself.").

Preliminarily, we reject Physician's position that the heading "Indemnification" dictates the meaning of the provision, as the agreements expressly provide that section headings do not affect the construction of any provision. We look instead to the four corners of the provision. By its terms, the provision is not expressly limited to third party claims. It states that each party is required to indemnify the other party from any and all losses, costs and expenses, including attorney's fees, arising from or relating

- 24 -

to "any breach by the indemnifying party of any . . . obligation under this Agreement." Agreement, 11/1/02, at ¶12d; Agreement, 3/1/03, at ¶12g. We find that this language expressly covers first-party claims for breach.

The facts herein contrast sharply with those in *Jalapenos*, *supra*, relied upon by Physician. That case involved the interplay of indemnity and subrogation provisions in a particular American Institute of Architects ("AIA") form contract. The indemnity language in that contract bears no resemblance to the indemnification clause at issue. We held therein, based on the AIA contract language, that the indemnification clause was intended to protect both the owner and the contractor from claims and losses not covered by insurance, not losses involving the work itself, which was the subject of the lawsuit. *Jalapenos*, *supra* at 929.

The indemnification provision herein unambiguously applies to first-party claims as well as third-party claims, and thus, KCAS was properly awarded attorney's fees. Moreover, we find no merit in Physician's argument that such an interpretation would entitle him to recover the attorney's fees he incurred in defending the lawsuit. The provision expressly limits indemnification to the non-breaching party, in this case, KCAS.[5]

Physician next contends that even if the indemnification provision applied to first party claims, KCAS would not be entitled to attorney's fees as

---

[5] There is no dispute over the amount of the attorney's fees.

Walter Strine, a principal of KCAS, was the client who paid the fees. Furthermore, he contends there was no evidence that KCAS paid any legal fees.

KCAS directs our attention to Physician's admissions in his Response to the Petition for Attorney's Fees, *i.e.*, that "Plaintiff [KCAS] commenced this case using the services of the law firm of Riley, Riper, Hollin & Colagreco until December 2008." Answer to Petition, at ¶4. Physician also admitted that, "Plaintiff [KCAS] engaged the services of the law firm of Petrikin, Wellman, Damico, Brown & Petrosa for all other legal services in this case." *Id*. at ¶9. Such admissions fly in the face of Physician's present contention that KCAS was not the client.

In addition, Attorney Green from the Riley firm testified that the bills were for services rendered in its representation of KCAS. Attorney Denis Dunn also confirmed that his firm represented KCAS. Since Mr. Strine was not a party and there was no evidence that the services were rendered on behalf of anyone other than KCAS, we find no merit in Physician's contention. The trial court concluded that KCAS was the client for whom the legal services were performed and the record supports that finding.

In his penultimate issue, Physician alleges the trial court erred in awarding prejudgment interest to KCAS on this breach of contract claim. We review an award of prejudgment interest for an abuse of discretion. *Cresci Const. Servs., Inc. v. Martin*, 64 A.3d 254 (Pa. 2013). The essence of

Physician's claim is that the money purportedly owed to KCAS was never KCAS's money, but money belonging to Legion or Villanova Insurance Companies. We have already addressed and dismissed Physician's contention that KCAS was not the real party in interest. Furthermore, Physician's argument ignores the distinction between "contractual interest" and "prejudgment interest." Where, as here, a contract provides for the payment of money and one party breaches the contract by failing to pay, the non-breaching party may recover interest on the amount owed under the contract in one of two ways. In cases where the contract expressly provides for the payment of interest, or the payment of interest is implied by the nature of the promise, the interest is said to become an integral part of the debt itself, and, therefore, is recoverable as of right under the terms of the contract. *See*, *e.g*., Restatement (Second) of Contracts § 354 cmt. A. Instantly, the contract expressly provides for the recovery of interest in the case of breach. Hence, Physician's claim lacks merit.

Physician's final claim is that he was entitled to an award of attorney's fees and interest on his $2,500 counterclaim. ***Barium Steel Corp. v. Wiley***, 379 Pa. 38, 54 (Pa. 1954). The trial court disagreed, finding first that the subject matter of the counterclaim was not covered by the agreements herein, and thus, there was no contract provision entitling Physician to attorney's fees on that claim. Furthermore, the court declined

to award pre-judgment interest as "interest does not accumulate on a set-off claim." Trial Court Opinion, 5/7/15, at 17.

The record establishes that KCAS agreed to pay Dr. Grossinger $2,500 for a deposition he provided in a worker's compensation case in 2005 that was unrelated to and not contemplated within the two agreements at issue herein. Since Physician offered no express contractual basis authorizing an award of attorney's fees, the trial court was correct in declining to award such fees. Similarly, there was no contract providing for the payment of interest with regard to the $2,500 claim. However, even in the absence of a contractual provision, a non-breaching party may be entitled to pre-judgment interest and recovery is based on the amount due under the contract. **See** Restatement (Second) of Contracts § 354; **see also Trizechahn Gateway, LLC** , **supra** at 543-44.

The trial court ruled that no prejudgment interest was due on the $2,500 counterclaim since that claim was set off against the amount Physician owed KCAS. We agree. Additionally, we note that since Physician only demanded the $2,500 payment in 2011, any prejudgment interest calculated on $2,500 at six percent per year from that date is more than offset by the reduction of interest payable on the net amount awarded to KCAS calculated from 2004.

For all of the foregoing reasons, Physician is not entitled to relief.

Judgment affirmed.

Judge Olson joins the memorandum.

Judge Strassburger files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2016