**Darko MILICIC, Appellee**

v.

**The BASKETBALL MARKETING CO., INC. d/b/a AND 1, Appellant.**

Superior Court of Pennsylvania.

Submitted March 8, 2004.
Filed Aug. 25, 2004.

E. Graham Robb, Jr., Philadelphia, for appellant.

G. Craig Lord, Philadelphia, for appellee.

Before: HUDOCK, McCAFFERY and POPOVICH, JJ.

McCAFFERY, J.:

¶ 1 Appellant, The Basketball Marketing Company Inc. d/b/a AND 1, asks us to determine whether the trial court erred by issuing a preliminary injunction against it. Specifically, Appellant argues it did no more than send letters to its competitors informing them that it had a valid contract with Appellee, Darko Milicic, and that this did not rise to the level of wrongful conduct. For the reasons stated herein, we hold that the trial court properly granted Appellee's Petition for a Preliminary Injunction. Consequently, we affirm.

¶ 2 The trial court summarized the pertinent facts and relevant procedural history as follows:

Appellant is a Delaware Corporation with its principal place of business in Paoli, Pennsylvania. Appellant is in the business of the marketing, distribution and sale of basketball apparel and related products. Appellee, Darko Milicic, is an 18 year-old basketball player from Serbia, and was the 2003 second overall draft pick by the National Basketball Association's Detroit Pistons.

The parties entered into an endorsement agreement ("the agreement") on June 15, 2002, when [Appellee] was just 16 years-old, whereby [A]ppellant would pay [Appellee] certain monies and provide him with products in exchange for [Appellee's] endorsement. The agreement was twice amended, revising the amount of compensation and to whom the payments would be sent, however all other provisions remained the same, including the choice of law clause mandating the agreement to be governed by the laws of Pennsylvania.

Although [Appellee] was virtually unknown in the United States at the time the agreement was executed, by April of this year his status had significantly changed and it was widely known he was

likely to be a top five N.B.A. draft pick. As one would expect, [Appellee] was then in a position to sign a more lucrative endorsement deal and in June 2003, he proposed a buy out of the agreement. The parties agreed that [Appellee] would speak with other companies to determine the potential value of another agreement for negotiation purposes relating to the buy-out.

On June 20, 2003, four days after his 18th birthday, [Appellee] made a buy-out offer to [A]ppellant, which was refused. About six days later, [Appellee] sent [A]ppellant a letter disaffirming the agreement. He began returning all monies and products (or their equivalent value) he had received pursuant to the agreement.

Appellant refused to accept [Appellee's] letter as a negation of the agreement. On July 11, 2003, [A]ppellant wrote letters to Adidas America ("Adidas") and Reebok International Ltd. ("Reebok"), both of whom, according to the letters, were believed to have offered endorsement contracts to [Appellee]. In the letters, [A]ppellant informed the recipients that it was "involved in a contractual dispute" with [Appellee] and that the "agreement is valid and enforceable and will remain in force for several more years." Appellant also requested copies of all communication between [Appellee] and the respective companies.

Based upon [A]ppellant's letter, Adidas ceased negotiations and a nearly finalized endorsement agreement was not executed. [Appellee] filed the underlying Complaint seeking a Temporary Restraining Order, a Preliminary Injunction and Declaratory Relief. The Court granted the TRO and after a hearing, and consideration of briefs filed by both parties, granted the Preliminary Injunction. This timely appeal followed.

(Trial Court Opinion, October 23, 2003, at 1–3) (footnotes and citations omitted).

¶ 3 Appellant raises the following issues for our review:

1. WHETHER THERE WERE REASONABLE GROUNDS FOR THE COURT BELOW TO FIND THAT APPELLEE/PLAINTIFF MET HIS BURDEN TO ESTABLISH THAT THE APPELLANT/DEFENDANT HAD ENGAGED IN ACTIONABLE (*I.E.*, WRONGFUL) CONDUCT REGARDING APPELLANT/DEFENDANT'S COMMUNICATION WITH CERTAIN OF ITS COMPETITORS?

2. WHETHER REASONABLE GROUNDS EXISTED FOR THE COURT BELOW TO FIND THAT APPELLEE/PLAINTIFF HAD OTHERWISE SATISFIED HIS BURDEN TO ESTABLISH THE NECESSARY PREREQUISITES FOR OBTAINING INJUNCTIVE RELIEF?

3. WHETHER IT WAS APPROPRIATE FOR THE COURT BELOW TO, IN ESSENCE, PRONOUNCE FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO THE ULTIMATE ISSUE IN DISPUTE WHEN THAT ISSUE WAS NOT THE SUBJECT OF THE PETITION FOR INJUNCTIVE RELIEF?

4. WHETHER THE INJUNCTIVE RELIEF GRANTED BY THE COURT BELOW IMPROPERLY INFRINGED UPON APPELLANT/DEFENDANT'S RIGHT TO COMMUNICATE INFORMATION OF PUBLIC RECORD TO CERTAIN OF ITS COMPETITORS AND/OR THE PUBLIC IN GENERAL?

5. WHETHER APPELLEE/PLAINTIFF, HAVING DISAFFIRMED THE CONTRACT, COULD NEVERTHELESS RELY UPON THE CONTRACT'S CHOICE OF LAW PROVISION TO ASSERT PENNSYLVANIA LAW?

(Appellant's Brief at 4).

■ ¶4 As a preliminary matter, we note our limited standard and scope of review on a challenge to an order granting a preliminary injunction:

> [W]e do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor.

*Allegheny Anesthesiology Associates v. Allegheny General Hospital,* 826 A.2d 886, 891 (Pa.Super.2003) (citations omitted).

¶5 For ease of disposition, we will begin by addressing Appellant's third, fourth and fifth questions presented. In its third issue, Appellant avers that the trial court erred by pronouncing "findings of fact and conclusions of law as to the ultimate issue in dispute when that issue was not the subject of the petition for injunctive relief." (Appellant's Brief at 4). Regarding its fourth issue, Appellant seems to contend that the trial court's order infringed upon its constitutional right of commercial free speech. Then, in its fifth issue, Appellant argues that the trial court erred by applying a choice of law provision mandating the application of Pennsylvania law.

■ ¶6 It has long been settled that issues not raised in the lower court cannot be raised for the first time on appeal and are, therefore, waived. Pa.R.A.P. 302(a);

*ABG Promotions v. Parkway Publishing, Inc.,* 834 A.2d 613, 619 (Pa.Super.2003) (*en banc*). Further, "[t]his waiver rule applies even if the issue raised for the first time on appeal is a constitutional question." *Id.* at 619. In addition, issues not properly included in an appellant's Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925(b) are also deemed waived. *Abrams v. Uchitel,* 806 A.2d 1, 6 (Pa.Super.2002).

■ ¶7 Instantly, the trial court concluded that Appellant's third and fourth issues either were not properly raised or not properly developed at the trial court level. (Trial Court Opinion at 6–7). Appellant did not present any authority for its contention that the trial court made "improper findings of fact and conclusions of law", and did not even specify which "findings" were allegedly beyond the trial court's proper scope. (*Id.* at 7). Therefore, as Appellant's third issue was not properly raised and developed at the trial court level, this question is waived. *See ABG Promotions, supra* at 619.

■ ¶8 The trial court also noted that Appellant not only failed to cite any authority for its commercial speech argument (here presented as its fourth issue), but in fact relegated this *constitutional issue* to a mere footnote in its brief to the trial court. (Trial Court Opinion at 6). On appeal, Appellant has not done much better in developing this legal argument, offering only one citation in support of its argument, *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Moreover, the case is inapposite.

¶9 *Central Hudson* dealt specifically and limitedly with the constitutional implications of the suppression of commercial advertising. Appellant misleadingly

quotes *Central Hudson* by stating, "[o]nly commercial messages that 'do not accurately inform the public about lawful activity' may be subject to governmental suppression. *Id.* at 563, 100 S.Ct. 2343." (Appellant's Brief at 31). However, a review of *Central Hudson,* reveals the context of this quote as follows:

> The First Amendment's concern for commercial speech is based on the informational function of advertising. Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity.

*Id.* at 563, 100 S.Ct. 2343.

¶ 10 The case *sub judice* simply does not concern advertising or the governmental suppression thereof. Rather, the concern in this case is whether a valid contract exists between the parties and whether Appellant's conduct regarding that contract is actionable. Consequently, we conclude that Appellant's fourth issue merits no relief.

■ ¶ 11 Appellee contends that Appellant's fifth issue on appeal is also waived as it was not included in Appellant's 1925(b) statement. We agree, as our review of this statement revealed no mention of Appellant's contention that the trial court had improperly applied Pennsylvania law.[1] Thus, Appellant's fifth issue is also waived. *See Abrams,* 806 A.2d at 6.

---

**1.** Appellant raised this issue for the very first time in a supplemental memorandum in opposition to Appellee's petition for a preliminary injunction in response to an argument counsel made at the hearing on the injunction. Consequently, the trial court was also deprived of the opportunity to address the issue on a timely basis.

**2.** In order for a preliminary injunction to issue, the following four prerequisites must be proven:

■ ¶ 12 The crux of Appellant's case, however, lies in its second issue. There, Appellant argues that the trial court erred by concluding that Appellee had proven the four essential prerequisites necessary for injunctive relief.[2] However, Appellee did meet these four requirements as the trial court aptly explained:

1) **[Appellee] had a strong likelihood of success on the merits.**

   Pennsylvania law recognizes, except as to necessities, the contract of a minor is voidable if the minor disaffirms it at any reasonable time after the minor attains majority. *Pankas v. Bell,* 413 Pa. 494, 498, 198 A.2d 312, 313 (1964), *Aetna Cas. & Sur. Co. v. Duncan,* 972 F.2d 523, 526 (3d Cir. 1992). On July 1, 2003, just eleven days after his 18th birthday, [Appellee] sent [A]ppellant a letter withdrawing from the agreement. This letter was sent within a reasonable time after [Appellee's] reaching the age of majority and stated his unequivocal revocation and voidance of the agreement. There exists more than a reasonable probability that Appellee will succeed in his declaratory judgment action.

2) **Injunctive relief was necessary to prevent immediate and irreparable harm that could not be adequately**

---

(i) a strong likelihood of success on the merits;

(ii) a showing of immediate and irreparable harm that cannot be compensated by money damages;

(iii) a showing that greater injury will result if preliminary injunctive relief is denied than if such injunctive relief is granted; and

(iv) a showing that a preliminary injunction would restore the status quo.

*Allegheny Anesthesiology Associates,* 826 A.2d at 891.

**compensated by the awarding of monetary damages.**

Top N.B.A. draft picks generally solicit, negotiate and secure endorsement contracts within a short time after the draft to take advantage of the publicity, excitement and attendant marketability associated with the promotion. (Affidavit of Marc Cornstein, [Appellee's] agent). Appellant blocked [Appellee's] efforts to enter into such an endorsement agreement. After being contacted by [A]ppellant, advanced negotiations between [Appellee] and ADIDAS were suspended. These business opportunity and market advantage losses may aptly be characterized as irreparable injury for purposes of equitable relief. *See West Penn Specialty MSO, Inc. v. Nolan,* 737 A.2d 295, 299 (Pa.Super.1999).

"An injury is regarded as irreparable if it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard." *Id.* at 299. The inability to obtain a principal endorsement contract may have the residual effect of impeding [Appellee's] ability to obtain other endorsement contracts. (Cornstein affidavit). For this reason the injury cannot by precisely quantified nor adequately compensated by monetary damages.

3) **Greater injury would have occurred from denying the injunction than from granting the injunction.**

Appellant['s] refusal to acknowledge [Appellee's] ability to disaffirm the contract is at odds with public policy. Because infants are not competent to contract, the ability to disaffirm protects them from their own immaturity and lack of discretion. *Simmons v. Parkette Nat'l Gymnastic Training Ctr.,* 670 F.Supp. 140 (E.D.Pa.1987).

It is established practice in Pennsylvania to petition the court to appoint a guardian for the child, to protect the interests of both parties. It confounds the Court that [A]ppellant, a corporation of great magnitude, whose business may be said to be based in contract law, not only failed to have a guardian appointed for [Appellee] but as they have failed to produce any evidence that [Appellee] was represented by an attorney, the Court finds [Appellee] entered into this agreement without being advised of his rights.

[Appellee] was a child, living in a foreign country, when he signed the agreement that [A]ppellant, an experienced business corporation, drafted. By including a choice-of-law provision, [A]ppellant ensured both parties would be protected under the applicable Pennsylvania laws. As such, when [Appellee] signed the agreement, he came under the protection of 23 Pa. C.S. § 5101 which provides that only individuals 18 years of age and older shall have the right to enter into contracts.

Not only is harm to the petitioner considered, but harm to the public is an additional consideration in the issuance or denial of a preliminary injunction. *Valley Forge Historical Society v. Washington Memorial Chapel,* 493 Pa. 491, 426 A.2d 1123 (1981). The public policy consideration underlying the rule which allows a child to disaffirm a contract within a reasonable time after reaching the age of majority is that "minors should not be bound by mistakes resulting from their immaturity or the overbearance of unscrupulous adults." *Simmons,* 670 F.Supp. 140 at 144.

4) **The preliminary injunction restored the parties to the *status quo***

**that existed prior to the wrongful conduct**

Enjoining [A]ppellant from further interfering with [Appellee's] ability to contract will place the parties where they were prior to [A]ppellant's wrongful conduct. The sought-after relief in an injunctive action is to be returned to one's position prior to the improper actions of the opposing party. *Anchel v. Shea,* 762 A.2d 346, 351 (Pa.Super.2000). As all four of the essential prerequisites have been satisfied in this case, the Court properly granted injunctive relief.

(Trial Court Opinion at 4–6) (footnotes omitted). Consequently, the trial court concluded that, as the four integral perquisites were met, the preliminary injunction in question was properly issued.

¶ 13 After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the distinguished jurist, the Honorable Matthew D. Carrafiello, it is our determination that there is no merit to the second issue Appellant has raised on appeal. The trial court's opinion in this case comprehensively discusses and properly disposes of this issue. Accordingly, we affirm as to Appellant's second issue on the basis of that opinion.

¶ 14 Turning, finally, to Appellant's first issue: Appellant argues that the trial court erred by finding that the conduct which Appellant engaged in was actionable for purposes of the issuance of a preliminary injunction. Appellant contends that its act of sending letters to companies with which Appellee was negotiating did not constitute actionable conduct. (Appellant's Brief at 17–22). Rather, Appellant maintains that these letters merely set forth a fact of public record, specifically that Appellant and Appellee were involved in litigation. (*Id.* at 17–19). Essentially, Appellant maintains that it is of no consequence whether the endorsement contract at issue is invalid and, thus, the trial court erred by issuing a preliminary injunction. (*Id.*) We disagree.[3]

■ ¶ 15 Before a court may issue a preliminary injunction, it is essential that the conduct sought to be restrained is actionable. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 253, 602 A.2d 1277, 1283 (1992). In order for conduct to be actionable, it must breach a duty imposed by statute or by common law. *Id.*

■ ¶ 16 In this case, Appellee alleges that Appellant breached a duty imposed by common law because Appellant's conduct constituted intentional interference with prospective contractual relations.[4] As

---

3. Appellant invites this Court to disregard the likelihood that Appellee will succeed on the ultimate issue in question, namely whether a valid contract exists between the parties, and instead focus solely on whether Appellant's conduct in sending the letters at issue, in isolation, would be enough to set forth a cause of action for intentional interference with prospective contractual relations. The difficulty with Appellant's argument is akin to the age old question—which came first, the chicken or the egg? The trial court had to reach the question of whether a valid contract existed in order to determine whether Appellant's conduct formed the basis for a claim for intentional interference with prospective con-

tractual relations. The answer to the second question is dependent upon the answer to the first. Therefore, we decline Appellant's invitation.

4. The requisite elements for a claim of intentional interference with prospective contractual relations are as follows:

(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

stated above, we agree with the reasoning employed by the trial court in its determination that Appellee is likely to succeed on his underlying effort to invalidate the endorsement contract between the instant parties. Accordingly, Appellant's action of sending letters indicating that a valid contract *did* exist to entities already negotiating with Appellee, with the express purpose of halting such negotiations, would certainly support a valid claim for intentional interference with prospective contractual relations. *See Reading Radio, supra.*

¶ 17 Indeed, a prospective contractual relationship between Appellee and Adidas was actively being pursued, which appears to be exactly why Appellant sent Adidas the letter. Appellant, without privilege or justification, engaged in conduct which deliberately attempted to harm the negotiations and which, in fact, did stop Adidas from entering into a contract with Appellee. (Affidavit of Paul Ehrlich, General Counsel of Adidas, sworn August 4, 2003). Therefore, the trial court certainly had "apparently reasonable grounds" upon which to issue a preliminary injunction. *See Allegheny Anesthesiology Associates,* 826 A.2d at 891. Hence, Appellant's first issue on appeal also lacks merit.

¶ 18 Based upon the foregoing reasons, we hold that Appellant's conduct in sending out the letters to its competitors did support a valid potential claim for intentional interference with prospective contractual relations, and that Appellee proved the essential prerequisites necessary for injunctive relief. Additionally, the record supports the existence of reasonable grounds for the issuance of the in-

junction, and the trial court properly applied the law. As a result, we affirm the trial court's order granting a preliminary injunction in favor of Appellee.

¶ 19 Order affirmed.

---

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Reading Radio, Inc. v. Fink,* 833 A.2d 199, 211 (Pa.Super.2003), *appeal denied,* 577 Pa. 723, 847 A.2d 1287 (2004) (quoting *Strickland v. University of Scranton,* 700 A.2d 979, 985 (Pa.Super.1997)).