J-S23013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MEGAN S. SCHEIB | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER A. TUCKER | : | |
| | : | |
| Appellant | : | No. 618 EDA 2025 |

Appeal from the Order Entered February 7, 2025
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No: 0C1800969

BEFORE: STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.: **FILED OCTOBER 1, 2025**

Christopher A. Tucker ("Father") appeals *pro se* from the February 7, 2025, order granting a petition for expedited relief filed by Megan S. Scheib ("Mother") concerning the custody of the parties' son, G.J.T., born in January 2016, and daughter, X.S.T., born in April 2017 (collectively, "the Children"). After due consideration, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record. The parties were married in October 2014 and Mother initiated divorce and custody proceedings in July 2018. Ultimately, they executed a custody stipulation in March 2019 that provided for shared legal custody of the Children. Under this agreement, Mother was awarded primary physical custody and Father enjoyed partial physical custody every other weekend and every Tuesday and Thursday. *S. We*der, 3/13/19, at ¶ 5.

We note that this order also provided that Father would have physical custody on his birthday, *i.e.*, March 14. ***See id***. at ¶ 6.

Following the entry of this stipulated order, the parties engaged in extensive litigation that did not immediately alter the parties' respective custody entitlements and is not pertinent to the instant controversy. ***See Scheib v. Tucker***, 283 A.3d 412, at *1-*5 (Pa. Super. 2022) (Table). These disputes were resolved with the entry of a final, agreed-upon custody order in March 2023, which largely preserved the status quo while reducing Father's physical custody award to alternating weekends and during the evenings on every other Tuesday, Wednesday, and Thursday. ***See*** Order, 3/2/23, at 1-2. This order also included provisions for physical custody on specific holidays that "supersede" the "regular custody schedule." ***Id***. at 2-3. Of note, Father's birthday was not mentioned in this portion of the order. ***See id***.

On November 14, 2023, Mother obtained a temporary protection from abuse ("PFA") order against Father on behalf of G.J.T. ***See*** Petition to Modify, 11/16/23, at Exhibit B. Specifically, the temporary PFA order was entered based upon allegations that Father was physically abusive towards G.J.T. by "crushing the child" with his body weight. ***Id***. at ¶ 5. Thereafter, Mother filed a petition to modify custody that also detailed several additional allegations regarding Father's inappropriate behavior with the Children and substance abuse. ***See id***. at ¶ 15(a)-(k). Ultimately, these concerns were resolved with the entry of a stipulated order that prohibited the use of "corporal punishment"

or "physical restraints" by the parties. Order, 12/20/23, at 1. Mother subsequently withdrew the PFA against Father.

Thereafter, the contentious litigation between the parties continued. Although it is unnecessary for us to describe the full extent of these disputes, we note that they generally concerned competing claims of alleged contempt and failures to cooperate.[1] These disputes culminated in the entry of a new custody order on October 22, 2024, which provided for equally shared physical and legal custody of the Children. Specifically, Mother was awarded physical custody every Wednesday and Thursday, with alternating weekends beginning on Friday. Father was awarded physical custody on Mondays and Tuesdays, with alternating weekends beginning on Friday.

This order also directed that the Children "shall begin individual therapy as soon as possible with an agreed upon therapist." Order, 10/22/24 at 3. Father's birthday was, again, not mentioned in the holiday provisions. **See id**. at 2-3. With the entry of this order, all outstanding petitions from the parties were resolved. No appeals were filed.

On December 26, 2024, Mother filed the subject expedited petition for special relief alleging that Father had refused to confer with her regarding:

_____

[1] The parties each have been found to be in willful contempt of the court's orders during these proceedings. **See** Order, 10/22/24, at 3; Order, 10/3/22, at 2. The general tone of this litigation is best exemplified in the court's admonition in its October 22, 2024 order: "BOTH PARTIES ARE ADVISED TO STOP LIVING THEIR LIVES COLLECTING EVIDENCE AGAINST ONE ANOTHER FOR THE PURPOSES OF CUSTODY LITIGATION AND RATHER LIVE THEIR LIVES ENJOYING THEIR PRECIOUS CHILDREN AND WORK TOGETHER TO PROMOTE THEIR BEST INTERESTS." Order, 10/22/24, at 3.

(1) a final choice of therapist for the Children; (2) the Children's enrollment at Liberty Lake Day Camp for the summer of 2025; and (3) a previously scheduled vacation Mother had planned with the Children between March 11, 2025, and March 17, 2025. *See* Expedited Petition for Special Relief, 12/26/24, at ¶¶ 6-26. Mother also filed an identical, non-expedited version of this petition. *See* Petition for Special Relief, 12/26/24, at ¶¶ 6-26.

On January 10, 2025, Father's counsel withdrew her appearance. Father did not tender any written responses to Mother's petitions. On February 7, 2025, the trial court held a hearing on Mother's petitions. The parties were both present and testified. Mother was represented by counsel while Father appeared *pro se*, although his prior counsel was present at the beginning of the hearing and briefly explained she had ceased her representation of Father due to disagreements regarding legal strategy. *See* N.T., 2/7/25, at 4-5.

The parties' disagreements were straightforward. With respect to therapy, there were two potential providers identified for the Children: the Home for Anxiety, Repetitive Behaviors, OCD, and Related Disorders ("HARBOR") and Equilibria Psychological and Consultation Services ("Equilibria"). Father objected to utilizing HARBOR due to his concerns regarding the potential influence of Mother's father, whom we discern has some involvement with the healthcare industry. *See* N.T., 2/7/25, at 8 ("HARBOR has a deal with a referral that came from her father. They are trying to get [Mother's] father in control so that they can finally get what they need."). Father averred that he preferred to use Equilibria but also testified

that organization historically has had a long wait list for new patients. *See id*. at 9-10. In response to Father's concerns regarding HARBOR, Mother's counsel explained that the provider was not related to Mother's father's "referral network." *Id*. at 21. Ultimately, the trial court was "not persuaded" by Father's arguments and expressed concern that Father was "fixated" on Mother's family rather than the Children's best interests. *Id*. at 22.

As to the Children's enrollment at Liberty Lake Day Camp, Father's only concern was that he claimed that he had not yet had a sufficient opportunity to investigate alternative recommendations. *See id*. at 23-24. Specifically, he explained that he wanted to explore that availability of "military day camps" that emphasize "parental separation," which he claimed would not begin enrollment for summer classes until March 2025. *Id*. at 24. Father did not identify any such organizations or options with specificity.

Father objected to Mother's vacation plans due to its interference with his entitlement to custody on his birthday. *See id*. at 18-19. Mother's counsel responded that Father's birthday was no longer an "enumerated holiday" under the existing custody order. *Id*. at 18. Father generally explained that he had failed to respond to Mother's communications regarding these issues because Mother had indicated her intention to seek guidance from the trial court. *See id*. at 24 ("I can't respond over and over when she just tells me that they're going to go to court on it.").

On February 7, 2025, the trial court entered an order that granted Mother's petition and provided: (1) that Mother was empowered to enroll the

Children in either HARBOR or Equilibria if the parties could not reach a "consensus" on the choice of therapist within three days of the hearing; (2) the Children would be enrolled in Liberty Lake Day Camp for the summer of 2025; and (3) Mother was permitted to take the Children on the planned vacation irrespective of Father's birthday.[2]  Order, 2/7/25, at 1-2.

On March 6, 2025, Father filed a timely *pro se* notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3]  In his concise statement, Father set forth a single issue that collectively raised allegations of judicial bias and due process violations.  **See** Father's Concise Statement, 3/6/25, at ¶ 1.  In pertinent part, Father's concise statement read as follows:

> The trial court erred and/or abused its discretion by granting [Mother's] motion for expedited relief and [Mother's] motion for special relief while denying [Father] his rights, denying [Father's] ability to submit exhibits, have his witness testify to the Rule 4.1 violation of [Mother's] filing, and failing to provide him with the same due process guarantees afforded to [Mother].  The court

---

[2]  As discussed further *infra*, we conclude that Father has waived his appellate claims.  Nonetheless, we note that Father's birthday no longer appears to be a recognized "holiday" that impacts physical custody.  **Compare** Order, 10/22/24 at 2-3 **with** Order, Order, 3/13/19, at ¶ 6.

[3]  This Court has explained that, "[g]enerally, a custody order will be considered final and appealable only if it is both: (1) entered after the court has completed its hearing on the merits; and (2) intended by the court to constitute a complete resolution of the custody claims pending between the parties."  **Wagner v. Wagner**, 887 A.2d 282, 285 (Pa. Super. 2005).  In the case *sub judice*, the trial court's February 7, 2025, order was entered following a hearing and disposed of all the parties' outstanding custody claims.  Consequently, the underlying order is final and we may proceed to review the merits of Father's claims for relief.  **See id**.; **see also** Pa.R.A.P. 341(a)-(b).

continually demonstrated favoritism, greater leniency, and favorable scheduling towards [Mother] due to her counsel being the son of a retired Pennsylvania family court judge. Additionally, the trial court allowed [Mother's] counsel to manipulate the court process by circumventing a prior order and obtaining a rehearing of a prior ruling without following the directions in the prior order or without the required appeal or reconsideration procedures under Pa.R.C.P. 1930.2 and Pa.R.A.P. 903, thereby denying [Father] the same procedural opportunities. The court further abused its discretion by failing to apply procedural rules equally to both parties, permitting [Mother] to bypass legal requirements while strictly enforcing them against [Father]. This conduct constitutes judicial bias, procedural unfairness, and a violation of [Father's] right to equal and fair adjudication.

*Id*. at 1-2 (cleaned up).

On April 3, 2025, the trial court filed a responsive opinion pursuant to Rule 1925(a)(2)(ii), wherein it opined that Father's concise statement was insufficiently specific. *See* Trial Court Opinion, 4/3/25, at 5 (averring that Father's "broad and vague statements" resulted in waiver).

Father has framed his appellate claims for relief, as follows:

I.      The court erred by overruling [Father's] legitimate concerns without meaningful consideration, resulting in prejudice to respondent and harm to the Children's best interests, vacation conflict, and disregard for Father's parental rights.

II.     Whether the trial court erred in granting [Mother's] motion for expedited relief and motion for special relief without adequately considering [Father's] objections regarding conflicts with his parenting time, including a family tradition surrounding his birthday?

III.    Whether the trial court abused its discretion by approving [Mother's] unilateral selection of a therapy provider with documented ties to prior harmful conduct, including the weaponization of therapeutic records and repeated involvement of child protective services?

- 7 -

IV.     Whether [Father] is continually subjected to judicial bias,
        denied procedural due process as a *pro se* [sic], and its [sic]
        continual favoritism, greater leniency, and favorable
        scheduling towards [M]other.

Father's Brief at 4-5 (cleaned up).

Our standard of review in the custody context is well-established:

Our standard of review over a custody order is for a gross abuse
of discretion.  If a trial court, in reaching its conclusion, overrides
or misapplies the law or exercises judgment which is manifestly
unreasonable, or reaches a conclusion that is the result of
partiality, prejudice, bias or ill will as shown by the evidence of
record, then discretion is abused.

*Yates v. Yates*, 963 A.2d 535, 538-39 (Pa. Super. 2008) (cleaned up).

Furthermore,

the appellate court is not bound by the deductions or inferences
made by the trial court from its findings of fact, nor must the
reviewing court accept a finding that has no competent evidence
to support it.  However, this broad scope of review does not vest
in the reviewing court the duty or the privilege of making its own
independent determination.    Thus, an appellate court is
empowered to determine whether the trial court's incontrovertible
factual findings support its factual conclusions, but it may not
interfere with those conclusions unless they are unreasonable in
view of the trial court's factual findings; and thus, represent a
gross abuse of discretion.

*A.J.B. v. M.P.B.*, 945 A.2d 744, 746-47 (Pa. Super. 2008) (cleaned up).

Father's brief, while comprehensible, is not a model of clarity.  Although
nominally subdivided into four sections, Father's arguments are disorganized
and repetitious.   We discern that he has raised the following issues for our
consideration:  (1) that the trial court failed to adequately consider several
custody factors at 23 Pa.C.S. § 5328(a); (2) that the trial court's holding

violated the principles of shared legal custody set forth at 23 Pa.C.S. § 5322; (3) that Mother's counsel violated the Rules of Professional Conduct; and (4) that Father has been treated unfairly by Mother and the trial court such that his procedural and substantive rights have been violated. **See** Father's Brief at 14-49. Overall, it is clear that Father maintains that the trial court erred in granting the relief requested by Mother over his various objections.

We will begin our review by addressing the trial court's contention that Father has waived his appellate claims pursuant to Rule 1925. **See** Trial Court Opinion, 4/3/25, at 5 ("Father's broad statement fails to identify specific instances or examples, from either the order or testimony, that allows this [c]ourt to be able to identify and address the issue."). We must disagree.

Rule 1925 provides, in pertinent part and with respect to children's fast track appeals, as follows:

> (2) *Children's fast track appeals.* In a children's fast track appeal:
>
> > (i) The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal.
>
> \* \* \* \*
>
> (4) *Requirements; waiver*.
>
> > (i) The Statement shall set forth only those errors that the appellant intends to assert.
> >
> > (ii) The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge. The judge shall not require the citation to authorities or the record; however, appellant may choose to include pertinent authorities and record citations in the Statement.

* * * *

(iv) The Statement should not be redundant or provide lengthy explanations as to any error. Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver.

(v) Each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court; this provision does not in any way limit the obligation of a criminal appellant to delineate clearly the scope of claimed constitutional errors on appeal.

* * * *

**(vii) Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.**

Pa.R.A.P. 1925(a)(2)(i), (b)(4)(i)-(ii), (iv)-(v), (vii) (emphasis added).

This Court has explained that "[a] concise statement must be specific enough for the trial court to identify and address each issue the appellant wishes to raise on appeal." *Mazurek v. Russell*, 96 A.3d 372, 377 (Pa. Super. 2014). Indeed, it is practically axiomatic that "[a] concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." *Commonwealth v. Schofield*, 312 A.3d 921, 927 (Pa. Super. 2024).

Instantly, however, we cannot agree with the trial court's suggestion that Father's concise statement is fatally vague. To the contrary, Father's assignments of error are readily identifiable. Although these allegations have been lumped together in a single paragraph, we remain mindful that "the

- 10 -

number of errors raised will not alone be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(iv). Reviewing Father's concise statement with a plain eye, we clearly recognize that his claims relate to allegations of judicial bias and purported violations of his due process rights. **See** Father's Concise Statement, 3/6/25, at ¶ 1. Accordingly, we must disagree with the trial court's waiver assessment. **See Mazurek**, 96 A.3d at 377 (citing **Jarl Investments, L.P. v Fleck**, 937 A.2d 1113, 1119-1120 (Pa. Super. 2007) (addressing issues on appeal where the allegations of error were distinguishable)).

Nonetheless, this finding does not conclude our assessment pursuant to Rule 1925. We emphasize that the trial court's waiver findings under Rule 1925 were predicated solely upon the alleged vagueness of Father's concise statements. We note, however, that Father has raised several claims in his brief that were simply not included in his concise statement. It is beyond cavil that "issues not properly included in an appellant's [c]oncise [s]statement of [m]atters [c]omplained of on [a]ppeal pursuant to Pa.R.A.P. 1925(b) are also deemed waived." **Milicic v. Basketball Marketing Co., Inc.**, 857 A.2d 689, 693 (Pa. Super. 2004); **see also Northern Ins. Co. of New York v. Resinski**, 827 A.2d 1240, 1244 (Pa. Super. 2003) (same).

Specifically, Father's arguments in his brief regarding Section 5328(a), Section 5322, and the Pennsylvania Rules of Professional Conduct are

completely absent from his concise statement.[4]  ***Compare*** Father's Concise

Statement, 3/6/25, at ¶ 1 ***with*** Father's Brief at 14-49.  To the extent that

Father relies upon these claims for relief, he has waived them.[5]  ***See Milicic***,

857 A.2d at 693; ***Resinski***, 827 A.2d at 1244; Pa.R.A.P. 1925(b)(4)(vii).

_____

[4] We acknowledge that Father's concise statement includes a passing reference to Pennsylvania Rule of Professional Conduct 4.1 ("Truthfulness in Statements to Others").  ***See*** Father's Concise Statement, 3/6/25, at ¶ 1.  In his brief, however, Father has abandoned this argument and raised novel claims concerning Pennsylvania Rules of Professional Conduct 3.3, 3.5, and 8.4.  ***See*** Father's Brief at 13, 17, 48.  These separate issues were not appropriately included in Father's concise statement and, thus, are waived.  Even if not waived, we emphasize that our Rules of Professional Conduct do not have the effect of substantive law but, instead, are to be employed in disciplinary proceedings."  ***In re Adoption of M.M.H.***, 981 A.2d 261, 272 (Pa. Super. 2009) (citing ***In re Estate of Pedrick***, 482 A.2d 215, 217 (Pa. 1984)).  Indeed, the preamble to the Rules emphatically explains that the Rules are not intended to be used as a procedural weapon in civil proceedings that do not involve the discipline of attorneys.  ***See*** Pa.R.P.C., Preamble and Scope, at ¶ 19.  Thus, we observe no merit in Father's arguments.

[5] Even assuming, *arguendo*, that Father's claims pursuant to Section 5328(a) were not waived, he would not be entitled to relief.  The trial court's order in this matter did not modify the parties' underlying custody awards, *i.e.*, the parties retained equally shared legal and physical of the Children both before and after the entry of the trial court's February 7, 2025, order.  Accordingly, there was no requirement that the trial court consider or issue findings pursuant to Section 5328(a).  ***See M.O. v. J.T.R.***, 85 A.3d 1058, 1062-63 (Pa. Super. 2014); ***see also S.S. v. T.J.***, 212 A.3d 1026, 1037 n.2 (Pa. Super. 2019) (noting that a trial court was not required to issue findings with respect to Section 5328(a) when addressing "discrete" issues regarding "vacation custody time" and similar "subsidiary" issues that did not have the ultimate effect of altering the parties' custody awards).  As such, Father's arguments concerning Section 5328(a) fall flat.  ***See L.L.B. v. T.R.B.***, 283 A.3d 859, 863 (Pa. Super. 2022) ("[W]here the court is ruling on a discrete and ancillary issue, it is not required to address the . . . custody factors.").

*(Footnote Continued Next Page)*

Based upon the foregoing, we readily conclude that the only arguments Father arguably has preserved in his concise statement of errors are the allegations of judicial bias and due process violations. *See* Father's Concise Statement, 3/6/25, at ¶ 1. Critically, Father did not preserve any such claims in the trial court. As noted above, Father did not submit any written responses or answers to Mother's petitions for special relief. Furthermore, he did not orally raise any arguments regarding judicial bias or due process violations during the February 7, 2025 hearing. *See* N.T., 2/7/25, at 3-25.

Pennsylvania law provides that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Furthermore, "[a] party cannot rectify the failure to preserve an issue" pursuant to Rule 302(a) by including that issue in a concise statement pursuant to Rule 1925(b) statement, since that filing "is not a vehicle in which issues not previously asserted may be raised for the first time." *Hinkal v. Pardoe*, 133 A.3d 738, 746 (Pa. Super. 2016) (citing *Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 444 (Pa. Super. 2003)).

Based upon the foregoing, we conclude that Father has waived the remainder of his appellate claims due to his failure to raise and preserve them in the trial court. *See* Pa.R.A.P. 302(a); *Hinkal*, 133 A.3d at 746; *Beausang*,

---

Father's references to Section 5322 appear equally unavailing, as that statute merely sets forth definitions applicable to the statutory scheme governing child custody in Pennsylvania. *See* 23 Pa.C.S. § 5322 ("Definitions."). On its face, it provides no evident basis for relief under these circumstances.

839 A.2d at 444. Thus, we will not address the merits of Father's claims of judicial bias or violations of his due process rights.

Even assuming, *arguendo*, that Father's claims were not waived, we find no merit in his allegations that the trial court denied him an equal opportunity to present arguments in support of his position. As the trial court explained:

> The issue before this [c]ourt was the fact that the parties were unable to communicate and come to an agreement regarding the Children's therapy, summer camp, and Mother's vacation schedule. The [c]ourt's determinations were guided by the best interests of the Children and the judicial discretion afforded by law.
>
> Father asserts that he was denied due process and equal procedural opportunities. This [c]ourt finds such allegations unfounded. Father was given the opportunity to present his case, submit exhibits, and offer testimony. . . .
>
> Father contends that this [c]ourt exhibited favoritism toward Mother due to her counsel's familial connection to a retired judge. This assertion is entirely without merit. Judicial decision were rendered impartially and based upon the facts presented and the necessity to act in the best interests of [the Children]. The mere presence of an attorney with familial judicial connections does not, in itself, establish bias or favoritism. Father failed to provide any substantive evidence demonstrating that such connections influence the [c]ourt's rulings.
>
> \* \* \* \*
>
> This [c]ourt found that Father was unwilling to cooperate with Mother about choosing options that would be in the Children's best interest. Instead, Father chose to be unresponsive regrading Mother's options for therapy and summer camp, knowing that Mother was attempting to discuss all possible options, forcing [her] to file [the underlying petitions]. This [c]ourt found Mother's evidence and exhibits to be sufficient, especially in light of the fact that Father did not object to the evidence that was presented.

Trial Court Opinion, 4/3/25, at 6-7, 10.

The record fully supports the trial court's findings. In his testimony, Father freely averred that he refused to confer with Mother regarding these issues due to Mother mentioning the possibility of seeking guidance from the trial court. *See* N.T., 2/7/25, at 24 ("I can't respond over and over when she just tells me that they're going to go to court on it."). Furthermore, our review of the certified record reveals no evident instances during the underlying proceeding when Father was prevented from submitting exhibits or testimony in support of his positions. Instead, Father's arguments during the hearing simply lacked substance and consisted entirely of vague, angry allegations of undue influence allegedly perpetrated by Mother's father and Mother's counsel. *See* N.T., 2/7/25, at 7-9, 20-23. Aside from Father's own self-serving statements, however, these claims lacked any obvious evidentiary basis or corroboration in the certified record. Moreover, the trial court found that Father's allegations lacked credibility. *See id*. at 22.

Thus, even if Father's legal claims were not waived for lack of preservation, we would find that they lack substantive merit. No relief is due.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/1/2025

- 15 -